**UNITED STATES of America, Appellee,**

v.

**Willie Matthew LINCOLN, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Franklin Calvin COLEMAN, Appellant.**

Nos. 92–3071, 92–3072.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 12, 1992.

Decided May 14, 1993.

Rehearing Denied in No. 92–3071 July 16, 1993.

Rehearing and Rehearing En Banc Denied in No. 92–3072 July 19, 1993.

---

Douglas Wham (appointed by this court) for appellant in No. 92–3071.

William Garber (appointed by this court) for appellant in No. 92–3072. David Carey Woll (appointed by this court) was on the brief for appellant in No. 92–3072.

Chrisellen R. Kolb, Asst. U.S. Atty., of the bar of the District of Columbia Court of Appeals, pro hac vice by special leave of the court, for appellee. Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher and Per Ramjford, Asst. U.S. Attys., were on the brief for appellee.

Before MIKVA, Chief Judge; WILLIAMS and HENDERSON, Circuit Judges.

PER CURIAM:

Appellants Willie M. Lincoln and Franklin Calvin Coleman appeal their drug possession and distribution convictions. Each appellant challenges the trial court's denial of his motions to sever and to suppress evidence. In addition, Lincoln appeals both the denial of his motion to suppress post-arrest statements and his sentencing classification as a career offender, while Coleman challenges the sufficiency of the evidence to support his conviction for possessing crack cocaine found in Lincoln's pocket. As set out below, we reject all of the appellants' arguments and affirm their convictions and sentences.

On September 17, 1991 several police officers, acting on informants' tips, staked out an unoccupied red jeep parked on a Washington, D.C. street. When Coleman and Lincoln entered the jeep and began to drive away, the officers pursued in two patrol cars and stopped the jeep by pulling one car in front of it and one behind. Officer John Marsh, who was in the second patrol car, testified that, before the stop, he saw Coleman make a motion as if passing something to Lincoln.*

---

\* Marsh testified at trial that he saw what "seemed to be a motion towards the passenger compartment by the driver, and it seemed consistent with leaving something there like there was some effort—kind of towards the area of the glove box" which "appeared to be consistent with passing of

After the stop, Officer Thomas Clark approached the jeep's passenger door and ordered Lincoln, who was in the front passenger seat, to show his hands. When Lincoln hesitated, Clark pulled him from the jeep and, as he did so, noticed a ball of tin foil, with plastic inside, protruding from Lincoln's front pants pocket. Clark then removed the foil ball and discovered crack cocaine inside. Upon further search, Clark discovered additional plastic bags of crack in the same pocket. Lincoln was then arrested and Coleman was removed from the driver's seat of the jeep. After learning that Coleman's name was "Frank," Marsh searched him and discovered a total of $281 in his pockets and two marijuana cigarettes in his wallet. Subsequent searches of the jeep turned up $1,165 in cash and $57 worth of food stamps under the rear floor mat and a flashlight containing a bag of cocaine powder in the rear storage compartment. The officers arrested Coleman and both men were then taken to the stationhouse.

After being advised of and signing waivers of their *Miranda* rights, Coleman and Lincoln each made incriminating statements to the police. Lincoln explained he had found the crack in his pocket earlier in the day and admitted that he would "have to take the beef" for it. Coleman denied any knowledge of the crack, admitted ownership of the marijuana cigarettes, claimed he had won all the money in the car and on his person playing craps and said that the bag of cocaine in the flashlight belonged to his girlfriend.

Both men were subsequently indicted on one count of possessing with intent to distribute more than five grams of crack and, in addition, Coleman was indicted on one count of simple possession of marijuana and one count of simple possession of cocaine. Following two hearings, the trial court denied motions by both defendants to suppress the drugs and to sever and by Lincoln to suppress his statement.

On December 17, 1991 a jury convicted the two men as indicted and the trial court sentenced them on February 24, 1992. Lincoln

was sentenced to 180 months' imprisonment followed by 8 years' supervised release and Coleman to 120 months' imprisonment on count 1, with concurrent terms of 24 months on each of the other two counts, followed by 8 years' supervised release.

Each appellant challenges the denial of his motions to suppress evidence and to sever, while Lincoln also challenges the denial of his motion to suppress his statement and his sentencing classification as a career offender and Coleman challenges the sufficiency of the evidence to support his conviction for possessing the crack found in Lincoln's pocket. We address each challenge in turn.

■ First, both appellants assert that the drugs found on their persons and in the jeep should have been suppressed as fruit of an illegal stop and search, claiming the officers lacked not only probable cause to arrest them but even a reasonable suspicion to stop them. We disagree. The unrebutted testimony at the motions hearings, which the trial court credited, was that two different reliable informants reported to the police that they had observed individuals matching the appellants' descriptions travelling in a red jeep with wood panelling and distributing drugs. In addition, one informant stated there were drugs and guns inside the jeep, identified the name of one of the two dealers as "Frank" and furnished a license plate number which the officers' investigation showed belonged to a jeep registered to Franklin Coleman and matched the one on the jeep under surveillance. Under the totality of the circumstances here—namely, the reliable informants' detailed and corroborated reports and the officers' own observations—we conclude that the officers had an objectively reasonable belief that both Coleman and Lincoln were engaged in drug distribution and therefore probable cause to arrest them. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Gerstein v. Pugh*, 420 U.S. 103, 111–12, 95 S.Ct. 854, 861–62, 43 L.Ed.2d 54 (1975). Further, once they had probable cause to arrest, the officers were entitled, incident to arrest, to

---

an object from Coleman towards Lincoln, his side of the car, or towards Lincoln himself."

Trial Tr. 74.

search the appellants' persons, *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), as well as the jeep's passenger compartment and any containers within it, *New York v. Belton*, 453 U.S. 454, 460–61, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). Accordingly, we affirm the district court's denial of the motions to suppress the drugs.

■ Second, both appellants challenge the trial court's refusal to sever, asserting their inconsistent defenses required separate trials. We find no reversible error in the trial court's decision. The denial of a motion to sever can be reversed only for abuse of discretion. *See United States v. Manner*, 887 F.2d 317, 324 (D.C.Cir.1989), *cert. denied*, 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990). Further, "when defendants properly have been joined under Rule 8(b) [of the Federal Rules of Criminal Procedure], a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, —— U.S. ——, ——, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993). Because neither appellant has cited any such risk here, we conclude the court did not abuse its discretion in denying the severance motions.

■ Third, Lincoln appeals the trial court's denial of the motion to suppress his post-arrest statement on the ground that his *Miranda* waiver was rendered involuntary by his inebriation at the time he signed it. In support, Lincoln cites (1) the inherent implausibility of his explanation of how he acquired the crack found in his pocket and (2) Clark's testimony that he "could smell a distinct odor of alcoholic beverage about [Lincoln's] person," 11/20/92 Tr. 53. The trial court expressly found, however, that Lincoln was not "too intoxicated to be able to voluntarily waive his rights or to understand the *Miranda* warnings that he was given." 12/2/91 Tr. at 26. Given Clark's testimony that he did not think intoxication "impaired [Lincoln] or his understanding," 11/20/92 Tr. 54, and that "[a]s in his physical actions, no, I

don't recall any impairment or any problems with him controlling himself," *id.* 60, we cannot characterize the court's finding as erroneous. For this reason, the denial of Lincoln's motion to suppress must be affirmed.

■ Fourth, Coleman asserts there was insufficient evidence to support a finding that he possessed the crack in Lincoln's pocket and that his conviction on count 1 must therefore be reversed. We disagree. The jury could reasonably have found Coleman in possession of the crack from Marsh's testimony that he saw Coleman pass something to Lincoln, from the large amount of cash Coleman admitted was his and from the testimony of a government expert who characterized the actual division of the money and narcotics between the two defendants as consistent with a common drug distribution pattern in which one individual—the "holder"—maintains control of the narcotics while a second—the "money man"—manages the cash proceeds. Accordingly, we affirm Coleman's conviction on count 1.

■ Finally, Lincoln appeals his sentencing classification as a career offender. The district court classified Lincoln as a career offender based on an April 28, 1985 conviction for distribution of PCP and an August 31, 1990 conviction for attempted possession with intent to distribute cocaine. Lincoln asserts the 1990 conviction should not have been counted as a qualifying career offender conviction because it was not "counted separately under the provisions of [USSG Ch. 4, Part A]," as required under USSG § 4B1.2, but was, instead, properly treated under USSG Ch. 4, Part A as related to two nonqualifying misdemeanor convictions. Thus, Lincoln argues, he had only one qualifying felony conviction, the 1985 one, and was therefore not a career offender. We find this reasoning unpersuasive. The § 4B1.2 limitation was intended to prevent separate counting, for career offender purposes, of qualifying felony convictions that are related to *each other*, apart from any relationship they may have to other convictions. *See United States v. Flores*, 875 F.2d 1110, 1113–14 (5th Cir. 1989) (rejecting appellant's argument that he was not a career offender because five of six prior felony convictions were "related" in

**360**

that they fell within two separate, internally-related groups). Thus, it is irrelevant that Lincoln's 1990 felony drug conviction may be related to two misdemeanor convictions. So long as the two felony convictions are unrelated *to each other* and counted separately *from each other* under the provisions of USSG Ch. 4, Part A, which they are, Lincoln was properly classified as a career offender.

For the preceding reasons, the appellants' convictions and sentences are

*Affirmed.*