UNITED STATES of America, Appellee,

v.

James BROWN, a/k/a Steven
Brown, Appellant.

No. 91–3291.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 23, 1993.

Decided Feb. 11, 1994.

Suggestion for Rehearing In Banc
Denied April 29, 1994.

Neil H. Jaffee, Asst. Federal Public Defender, argued the cause for appellant. With him on the brief was A.J. Kramer, Federal Public Defender.

Norman C. Bay, Assistant United States Attorney, Department of Justice, Civil Division, argued the cause for appellee. With him on the brief were J. Ramsey Johnson, United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr. and Robert Walker, Assistant United States Attorneys.

Before: EDWARDS, SILBERMAN, Circuit Judges, and OAKES,* Senior Circuit Judge, United States Court of Appeals for the Second Circuit.

Opinion for the Court filed by Senior Circuit Judge OAKES.

Dissenting opinion filed by Circuit Judge HARRY T. EDWARDS.

OAKES, Senior Circuit Judge:

This appeal involves Rules 8 and 14, the joinder rules, of the Federal Rules of Criminal Procedure, and certain of the Federal Rules of Evidence. James Brown appeals from a judgment of conviction on six drug charges and two firearms charges following a jury verdict in the United States District Court for the District of Columbia, William B. Bryant, *Judge*. While we hold that there was a misjoinder of firearms offenses under Rule 8(b), we hold that there was no plain error resulting in actual prejudice to Brown. We also hold that the district judge did not abuse his discretion in joining defendants and counts under Rule 14. Accordingly, we affirm the judgment of the district court.

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

## I.

### Background

This case arises from an undercover investigation of drug trafficking out of the residence of Victoria Williams located at Apartment 11, 2371 Eleventh Street, N.W., Washington, D.C. On November 20, 1990, Metropolitan Police Department (the "police") undercover officers bought a fifty-dollar rock of crack cocaine from Williams. In making the sale, Williams directed her minor daughter, Heaven Sinclair, to distribute the drugs to the officers and receive the money in return. According to chemical analysis, the rock consisted of .347 grams of cocaine base.

The November 20 purchase of the crack cocaine from Williams' apartment by undercover officers enabled the police to obtain a warrant to search her apartment (the "November Search"). Upon entry, the police found five individuals inside the apartment: Williams, Sinclair, the father of Sinclair's child, and two other relatives of Sinclair. Among other things, during the search, the police found in the apartment a replica Uzi pistol, several hundred dollars in cash, traces of cocaine, cocaine base, a scale, packaging material, firearms, and ammunition. At some point during the search, the police measured the distance from the back door of the apartment to the Meyer Elementary School to be twenty feet.

In Sinclair's bedroom the police found a metal safe and pried it open. The police recovered from the safe two pistols, a clip containing nine rounds of .32 calibre ammunition, a box containing forty rounds of nine millimeter ammunition, a digital scale, two razor blades with traces of white powder, two cardboard boxes containing sandwich-type bags, a number of empty zip-lock bags, and two larger zip-lock bags together containing over one hundred and thirty-five grams of cocaine base. Sinclair told police that the drugs and firearms belonged to appellant James Brown (a.k.a. "Steven Brown," "Cookie"). Although the police also found in Sinclair's bedroom identification cards for sever-al people, no identification cards or other papers were found relating to Brown; however, the police did lift Brown's fingerprints from inside the door of the safe, as well as from the scale inside the safe.

On February 21, 1991, based on Sinclair's statement that the drugs and firearms belonged to Brown, and the corroborating fingerprint evidence, a federal grand jury sitting in the District of Columbia indicted Brown on two counts of possession with intent to distribute 50 grams or more of cocaine base, on November 20, within 1,000 feet of a school, see 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 845a(a) [1] (1988 & Supp. 1990), and one count of using and carrying a firearm during and in relation to a drug trafficking crime. See 18 U.S.C. § 924(c)(1) (1988 & Supp.1990); see generally Indictment, *United States v. Brown*, Crim. No. 91–0082 (D.D.C. February 21, 1991) (the "Original Indictment").

That day, based on the Original Indictment against Brown, a judge issued a bench warrant for his arrest. The police arrested Brown that evening, and conducted a search of his person incident to that arrest (the "February Search"). During this search, police recovered a semiautomatic pistol (which had been shipped in interstate commerce and the serial number of which had been defaced) and a telephone pager. The police also found a safe key, which fitted into the cylinder of the safe in Sinclair's bedroom, and which contained a four-digit number matching three of the digits of the number on the safe found in Sinclair's bedroom, the fourth number having been obliterated.

On April 9, 1991, a grand jury issued a nine-count superseding indictment. Counts four, five, and seven (the "Original Offenses") were identical to the three counts contained in the February 2 indictment. The April 9 indictment also included three additional counts of unlawful distribution of cocaine base to a person under the age twenty-one on November 19 and/or within one thousand feet of a school, see 21 U.S.C. §§ 841(a)(1),

---

1. 21 U.S.C. § 845a was transferred to 18 U.S.C. § 860. *See* Pub.L. No. 101–647, § 1002(b), 104 Stat. 4827 (1990).

841(b)(1)(C), 845,[2] and 845a(a) (1988 & Supp. 1990) (counts one, two, and three); one count of employment of a minor to possess unlawfully with the intent to distribute 50 grams or more of cocaine base on November 20, (count six), *see* 21 U.S.C. § 845b(a)(1);[3] and two counts of possession, on February 21, 1991, by a prior convicted felon, of a firearm which had been transported in interstate commerce, and the manufacturer's serial number of which had been obliterated (counts eight and nine) (collectively, the "Additional Offenses"). *See* 18 U.S.C. §§ 922(g)(1), and 922(k) (1988 & Supp.1990); *see generally* Indictment, *United States v. Brown*, Crim. No. 91–0082 (D.D.C. April 9, 1991) (the "Superseding Indictment").

On May 14, 1991, Brown filed two motions under Fed.R.Crim.P. 14, one to sever the drug trafficking and firearms possession charges, and the other to sever the trials of Brown and Williams. The only mention of Fed.R.Crim.P. 8, prior to this appeal, occurred at the motions hearing, where counsel for Brown argued "I do and I maintain even orally that the indictment, that those [drug trafficking and firearms possession] offenses should not have been joined as a violation of Rule 8." Transcript of Motion Hearing, *United States v. Brown*, Crim. No. 91–0082–01 (D.D.C. June 25, 1991). Judge Bryant orally denied each motion.

On July 1, 1991, a four-day trial commenced in which Brown and Williams were tried together on all counts. At trial, in addition to the facts presented above and other evidence, the government's drug expert testified that the amount and packaging of the crack found inside the safe were consistent with an intent to distribute. On July 8, 1991, a jury found Brown guilty on counts one through six, eight, and nine, but not

guilty as to count seven.[4] On November 7, 1991, Judge Bryant sentenced Brown to serve 250 months on counts one through six, 120 months on count eight, and 60 months on count nine, with all eight sentences to run concurrently. This 250–month period of incarceration is to be followed by a ten-year period of supervised release.

On November 14, 1991, Brown filed a timely notice of appeal. Brown appeals the joinder of defendants and counts pursuant to Rules 8 and 14.

## II.

### *Jurisdiction*

The district court had jurisdiction over the case under 18 U.S.C. § 3231 (1988). This court has jurisdiction under 28 U.S.C. § 1291 (1988).

## III.

### *Standard of Review*

Before setting forth the standard of review applicable to joinder under Fed.R.Crim.P. 8(a), 8(b), and prejudicial joinder under Fed. R.Crim.P. 14, we must first examine the difference between Rules 8 and 14, and then determine whether any claims of misjoinder under these rules were preserved for appeal.

As Judge Friendly remarked, "[t]he question of the propriety of joinder under Rule 8 and of refusal to grant relief from prejudicial joinder under Rule 14 are quite different in nature.... The former is a question of law, subject to full appellate review.... In contrast, the grant of relief under Rule 14 lies within the discretion of the trial judge and refusal to sever counts or

---

**2.** 21 U.S.C. § 845 was transferred to 18 U.S.C. § 859. *See* Pub.L. No. 101–647, § 1002(a)(1), 104 Stat. 4827 (1990).

**3.** 21 U.S.C. § 845b was transferred to 21 U.S.C. § 861. *See* Pub.L. No. 101–647, § 1002(c), 104 Stat. 4827 (1990).

**4.** Williams was tried on six drug offenses including possession with intent to distribute fifty grams or more of cocaine base, *see* 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A)(iii), and using and carrying a firearm during a drug trafficking of-

fense. *See* 18 U.S.C. § 924(c)(1). At trial, the district court granted a motion for judgment of acquittal on the firearm count. The jury acquitted Williams on each of the remaining counts. While the Williams appeal was pending before this court, Williams challenged her convictions under 28 U.S.C. § 2255 (1988). This court remanded the case and the district court vacated the convictions. Williams then pleaded guilty to possession with intent to distribute fifty grams or more of cocaine base. On April 28, 1993, the district court sentenced Williams to time served.

defendants properly joined under Rule 8 will be reversed only if discretion was abused." *United States v. Werner,* 620 F.2d 922, 926 (2d Cir.1980) (footnote omitted). Thus, assuming the defendant has preserved the Rule 8 issue for appeal, if the joinder were not permitted by Rule 8 we will reverse a conviction unless the error was harmless, *id.;* however, if the defendant did not properly preserve the Rule 8 issue, or waived the issue under Rule 12(f), we will not reverse a conviction, even if Rule 8 would not have permitted joinder, unless there is plain error resulting in actual prejudice to the defendant. *See* FED.R.CRIM.P. 52(b); *cf. United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986) (harmonizing Rule 52(a)'s harmless error standard with Rule 8).

■ Without doubt, Brown has properly preserved the Rule 14 issue for appeal. Therefore, we review the court's denial of the Rule 14 motion for abuse of discretion. *See, e.g., Lane,* 474 U.S. at 449 n. 12, 106 S.Ct. at 732 n. 12 ("Rule 14's concern is to provide the trial court with some flexibility when a joint trial [or joint offenses tried together] may appear to risk prejudice to a party"); *United States v. Lincoln,* 992 F.2d 356, 359 (D.C.Cir.1993) (per curiam) ("[t]he denial of a motion to sever can be reversed only for abuse of discretion") (citation omitted); *United States v. Wood,* 879 F.2d 927, 937 (D.C.Cir.1989) ("[t]he standard of review for a district court's decision to deny a motion for severance is abuse of discretion"); *United States v. Arocena,* 778 F.2d 943, 949 (2d Cir.1985) ("[a] motion for severance under Rule 14 is addressed to the discretion of the trial court ... and the sound exercise of that discretion is 'virtually unreviewable.'") (citation omitted); *cert. denied,* 475 U.S. 1053, 106 S.Ct. 1281, 89 L.Ed.2d 588 (1986). *See also Opper v. United States,* 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954); *United States v. Halliman,* 923 F.2d 873, 884 (D.C.Cir.1991) ("[a] denial of a motion to sever is not an abuse of discretion 'merely because a defendant "might have a better chance of acquittal if tried separately."'") (citation omitted); 1 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 2D, § 227, at 854 (1982 & Supp.1993). The defendant carries the burden of showing

that "his rights to a fair trial have been prejudiced by the joinder, and refusal to grant a severance will be affirmed even if the circumstances are such that a grant of severance would have been sustainable." *Id.* at 854–55; *see also United States v. Robinson,* 432 F.2d 1348 (D.C.Cir.1970) (per curiam).

In contrast, as we have said, we review the Rule 8 issue under the plain error standard because, as we explain below, Brown failed to preserve this issue for appeal. *See* FED. R.CRIM.P. 52(b); *United States v. Bailey,* 675 F.2d 1292, 1294 (D.C.Cir.1982) (defendant waived Rule 8 issue by failing to bring legal and factual arguments underlying a Rule 8 objection to the attention of the district court even though defendant moved for a severance under Rule 14), *cert. denied,* 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982). In reviewing the issue for plain error, we underscore our duty to use Rule 52(b) "sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982).

## IV.

### *Discussion*

**A. Application of Rule 8**

■ This Circuit has long established that "'the propriety of joinder in cases where there are multiple defendants must be tested by Rule 8(b) alone and ... Rule 8(a) has no application.'" *United States v. Jackson,* 562 F.2d 789, 794 (D.C.Cir.1977) (quoting 1 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 2D, § 144, at 494 (1969)); *see also United States v. Halliman,* 923 F.2d at 882–83 (D.C.Cir.1991) (same); *United States v. Perry,* 731 F.2d 985, 989 (D.C.Cir.1984) (same). Thus, in this case of multiple defendants, even where the joinder of counts is at issue, Rule 8(b) applies. The distinction between Rules 8(a) and 8(b) is subtle but important because, as the government concedes, as a matter of law, that here "joinder was mistaken [under Rule 8(b)], though it would have been proper under Rule 8(a), had [Brown's] case not been joined with

codefendant Williams' case." Government's Br. at 16.

Under Rule 8(a), "[t]wo or more offenses may be charged in the same indictment ... *if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.*" FED.R.CRIM.P. 8(a) (emphasis added). In contrast, under Rule 8(b), "[t]wo or more defendants may be charged in the same indictment ... *if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.* Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count." FED.R.CRIM.P. 8(b) (emphasis added).

In this case, although the Original Offenses were "of the same or similar character" as the Additional [firearms] Offenses, FED.R.CRIM.P. 8(a), the Original Offenses and the Additional [firearms] Offenses do not belong to "the same act or transaction or in the same series of acts or transactions." FED. R.CRIM.P. 8(b). Thus, had Brown brought Rule 8(b) to the attention of the district court in his pre-trial motion to sever, the court probably would have granted Brown a severance of counts under Rule 8(b) as a matter of law.

## B. Standard of Review for Rule 8 Errors

Rule 8 not only may shield a party from prejudicial joinder but also serves to protect a variety of other interests served by joint trials including the interests in "'conserv[ing] state funds, diminish[ing] inconvenience to witnesses and public authorities, and avoid[ing] delays in bringing those accused of crime to trial.'" *Lane,* 474 U.S. at 449, 106 S.Ct. at 732 (quoting *Bruton v. United States,* 391 U.S. 123, 134, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968)). In harmonizing the somewhat conflicting policies of Rule 8, we understand misjoinder under Rule 8 to constitute an error which affects substantial rights. Nevertheless, "we do not read Rule 8 to mean that prejudice results

*whenever* its requirements have not been satisfied." *Id.* (emphasis in original).

For this reason, normally, we will reverse the district court's denial of a defendant's motion to sever unless the misjoinder constitutes harmless error. *See* FED.R.CRIM.P. 52(a); *United States v. Werner,* 620 F.2d at 926; 1 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 2d, § 851, at 294 (1982 & Supp.1993). If the defendant fails to preserve the issue for appeal, however, we will reverse the district court's denial of the defendant's motion to sever only if the misjoinder results in actual prejudice to the defendant. *See* FED. R.CRIM.P. 52(b); *Lane,* 474 U.S. at 449, 106 S.Ct. at 732.

We first examine the question whether Brown preserved the Rule 8 issue for appeal.

## C. Rule 12(f) Waiver of Rule 8(b) Issue

■ Under Rule 12(f), "[f]ailure by a party to raise defenses or objections or to make requests which must be made prior to trial ... shall constitute waiver thereof." FED. R.CRIM.P. 12(f); *see also Bailey,* 675 F.2d at 1294 (interpreting Rule 12(f) in the context of Rules 8(b) and 14); *cf. United States v. Mitchell,* 951 F.2d 1291, 1296–98 (D.C.Cir. 1991) (citing *Bailey* and holding that one defendant waived his right to challenge the illegality of a search by failing to move to suppress evidence arising from the warrantless search; nevertheless, the other defendant preserved the issue for appeal by mentioning the warrantless search in his brief supporting his motion to suppress), *cert. denied,* —— U.S. ——, 112 S.Ct. 1976, 118 L.Ed.2d 576 (1992). Rule 12(f) contains only one narrow exception, "the court *for cause shown* may grant relief from the waiver." FED.R.CRIM.P. 12(f) (emphasis added).

Prior to trial, as we have said, Brown filed two motions under FED.R.CRIM.P. 14, one to sever the drug trafficking and firearms possessions, and the other to sever the trials of Brown and Williams. Neither motion mentions Rule 8. In fact, in citing Rule 14, the motions in effect assume that joinder was permissible, but that joinder would be prejudicial. As we have noted, the only mention

of Rule 8, prior to this appeal, occurred at the motions hearing, where counsel for Brown mentioned in passing "I do and I maintain even orally that the indictment, that those [drug trafficking and firearms possession] offenses should not have been joined as a violation of Rule 8." Judge Bryant orally denied both Rule 14 motions.

Instead, we hold that Brown failed to raise Rule 8 at all. His passing reference to Rule 8 at the pretrial hearing was insufficient to preserve the issue for appeal. Further, this passing reference does not supply the "cause" necessary to apply the Rule 12(f) exception whereby "the court for cause shown may grant relief from the waiver."[5] Thus, we will review the Rule 8 issue under the plain error standard.

## D. Plain Error Rule

■ Under the plain error rule, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." FED. R.CRIM.P. 52(b). The plain error rule gives us, as an appellate court, "the latitude to correct particularly egregious errors on appeal regardless of the defendant's trial default." *Frady,* 456 U.S. at 163, 102 S.Ct. at 1592.

> Rule 52(b) was intended to afford a means for the prompt redress of miscarriages of justice. By its terms, recourse may be had to the Rule only on appeal from a trial infected with error so "plain" the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it. The Rule thus reflects a careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed.

*Id.* (footnotes omitted).

Applying the plain error rule to Brown's appeal, we note that the Supreme Court has held that "an error involving misjoinder 'affects substantial rights' and requires reversal

only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Lane,* 474 U.S. at 449, 106 S.Ct. at 732 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

In this case, the misjoinder of the Original Offenses with the Additional [firearms] Offenses did not result in actual prejudice to Brown, however, because (1) the government had presented overwhelming evidence against Brown, (2) the judge presented the jury instructions in such a way as to minimize any risk of actual prejudice to Brown, (3) the acquittal on count seven, the Original [firearms] Offense, demonstrates that the jury was able to compartmentalize the charges, and (4) the evidence of the Additional [firearms] Offenses would have been cross-admissible had Brown been tried alone on the drug trafficking offenses. *See* FED. R.EVID. 403, 404(b).

### 1. Overwhelming Evidence Against Brown

The government's case featured overwhelming physical evidence corroborated by the insider testamentary evidence of Heaven Sinclair. The November Search revealed the safe in Sinclair's bedroom, from the door of which the police lifted two of Brown's fingerprints, as well as two of his fingerprints from a digital scale inside the safe. The other evidence found inside the safe included, as we have said, two pistols, nine rounds of .32 calibre ammunition, forty rounds of nine millimeter ammunition, two razor blades with traces of white powder, packaging material, and over one hundred and thirty-five grams of cocaine base. A jury could have found Brown guilty of firearms possession and drug trafficking charges beyond a reasonable doubt on this physical evidence alone.

This evidence was corroborated by the sworn statements of Sinclair. On the day of the November Search, Sinclair told police that the drugs and firearms belonged to

---

5. Brown's main appellate brief relies on Rule 8(a) rather than Rule 8(b). *See* Appellant's Reply Br. at 1–2 (correcting citation in main brief).

We do not rely on this inaccuracy in holding that Brown failed to preserve the Rule 8 issue.

Brown. Then, during the February Search, police recovered additional physical evidence to support these and other drug trafficking and firearms charges: a safe key, which fitted into the cylinder of the safe in Sinclair's bedroom, with a four-digit number matching three of the digits of the number on that safe, the fourth number having been obliterated. The police also recovered a semiautomatic pistol and a telephone pager (the cross-admissibility of which we discuss *infra*).

The admission into evidence of the pistol and the pager raises the issue of prejudice under Rule 8 and Rule 14. Nevertheless, from the other evidence, for example, a jury could have found, beyond a reasonable doubt, that the safe belonged to Brown, that Brown was an armed drug dealer who cajoled Williams and Sinclair into using their home perhaps because it was so close to the Meyer Elementary School, and that Brown had placed the safe in Sinclair's bedroom to store the tools of his trade: the drugs, scale, firearms, and packaging material. The safe key and its four-digit number matching three of the digits of the number on the safe confirm the case against Brown.

## 2. Jury Instructions

To ward against potential prejudice, the judge explained the concept of multiple defendants and multiple counts and then directed the jury to consider "each count and the evidence pertaining to it ... separately." After giving these general instructions, the judge charged the jury with the elements of the law on each count for each defendant separately. Furthermore, the judge informed the jury that it was to assess the credibility of each witness. The jury knew that Sinclair was the daughter of Williams, and therefore understood that Sinclair might be biased. The judge explained that Sinclair, a government witness whose testimony was very damaging to Brown, was an alleged accomplice whose "testimony ... should be received with caution and scrutinized with care. You should give it such weight as in your judgment it is fairly entitled to receive." We may presume that the jury follows its instructions. *See Zafiro v. United States,*

—— U.S. ——, ——, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993) (citation omitted).

## 3. The Acquittal on Count Seven

The jury acquitted Brown on count seven which alleged that "[o]n or about November 20, 1990, within the District of Columbia, [Brown] did knowingly use and carry a firearm, that is, a .32 calibre semiautomatic pistol and a 7.65 millimeter semiautomatic pistol, during and in relation to a drug trafficking crime ... that is, the offense set forth in Count Four." The jury found Brown guilty of count four, possession with intent to distribute. The jury also found Brown guilty on counts eight and nine, almost identical firearms possession charges committed in February. The acquittal on count seven, therefore, is some evidence that the jury did follow the instructions and was able to discriminate among charges and evidence.

## 4. Cross–Admissibility of Evidence

The joinder of the Original Offenses with the Additional [firearms] Offenses does raise issues of relevance, admissibility, and prejudice under FED.R.EVID. 401, 402, 403, and 404(b). Brown argues that some of the evidence found on his person during the February Search (the semiautomatic pistol, and the pager, but not the safe key) was inadmissible as evidence to prove the Original Offenses because it was relevant only to show propensity, which is forbidden under Rule 404(b); therefore, its "probative value is substantially outweighed by the danger of unfair prejudice." FED.R.EVID. 403.

In general, all relevant evidence is admissible. *See* FED.R.EVID. 402. The Rules define "relevant evidence" to mean "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401. Our first question, then, is whether the gun, or the pager, were relevant in proving the Original Offenses: Does either the gun, or the pager, tend to make the existence of any fact of consequence more probable or less probable? FED.R.EVID. 401, 402. We then ask whether the purpose for which the evidence is being

admitted is proper. *See* FED.R.EVID. 404(b). If the evidence is relevant and proffered for a proper purpose, we must then determine whether its probative value is substantially outweighed by its prejudicial effect. FED. R.EVID. 403; *see also United States v. Miller,* 895 F.2d 1431, 1435 (D.C.Cir.), *cert. denied,* 498 U.S. 825, 111 S.Ct. 79, 112 L.Ed.2d 52 (1990).

### a. Relevancy Requirements of Rules 401, 402

■ Brown was charged with dealing in drugs and firearms possession. When arrested in February for the Original Offenses, Brown was in possession of the equipment of an armed drug dealer: a pager, a gun, and, of course, the key to the safe that contained drug paraphernalia, drugs, and firearms. Thus, the gun and the pager were relevant evidence; they tended to make more probable the existence of the fact that Brown was an armed drug dealer who used Williams' apartment, and, more specifically, Sinclair's bedroom, to inventory cocaine and to cache the tools of his trade.

### b. Inadmissibility of Relevant Evidence under Rule 404(b)

■ Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In this case, the pager is relevant to show intent to distribute, and, therefore, admissible for a proper purpose under Rule 404(b). *See United States v. Rogers,* 918 F.2d 207, 212 n. 3 (D.C.Cir.1990) (specifically failing to reach the question "whether—and under what circumstances—possessing a beeper maligns the person who possesses one").

The gun is more difficult. At trial, the gun was actually admitted as evidence in reference to counts eight and nine: "On or about February 21, 1991, within the District of Columbia [Brown] having been convicted of a crime punishable by imprisonment for a term exceeding one year ... did unlawfully, know-

ingly and intentionally transport, ship or receive, in interstate or foreign commerce, a firearm." The question, however, is whether the evidence would have been admitted had Brown been tried alone on the Original Offenses.

A reasonable person could come to the conclusion that a person who carries a gun with a serial number effaced is a person of the type who would deal drugs to elementary school children; therefore, the gun would be inadmissible if used to show Brown's propensity to deal in drugs or to show "action in conformity" with the character of a drug dealer, whatever that may be. Nevertheless, the gun is cross-admissible under Rule 404(b) because it was relevant to show intent, knowledge or absence of mistake with respect to the firearms found in the safe during the November Search.

### c. Balancing Requirements of Rule 403(b)

■ Under Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED.R.EVID. 403. In balancing probative value against prejudicial effect, this court "lean[s] toward admitting evidence in close cases." *United States v. Miller,* 895 F.2d at 1436 (quoting *United States v. Manner,* 887 F.2d 317, 322 (D.C.Cir.1989), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990)).

First, we question whether admission of the pager into evidence would have had any prejudicial effect. The admission of a pager is neither prejudicial nor probative in proving the character of a person. Although the pager may be one of the many items associated with a drug dealer, many others including doctors, legal assistants, and emergency medical technicians carry pagers as part of their legitimate jobs in our modern world of advanced technological communications. Thus, the pager had little if any prejudicial effect. Second, the pager may have had some probative value. Therefore, we hold

that the pager was cross-admissible. In contrast, while the admission of the semiautomatic pistol may have been prejudicial, its prejudicial effect did not outweigh its probative value. The pistol found during the February Search tends to make it less probable that the pistols found in the safe during the November Search were there by mistake or without intent. On the other hand, the fact that when Brown was arrested police found him armed with a semiautomatic pistol could be a very prejudicial fact. Nevertheless, this prejudicial fact has considerable probative weight. Therefore, the gun, while a close call, also was cross-admissible.

### 5. Conclusion as to Rule 8

In short, we hold that Brown did not preserve the Rule 8 issue for appeal, and that the misjoinder under Rule 8 was not plain error, did not result in actual prejudice to Brown, and therefore does not require us to set aside Brown's conviction.

### E. Rule 14 Relief from Prejudicial Joinder

■ As a preliminary matter, our application of Rule 52's harmless and plain error rule does not eviscerate Rule 14, "which provides the trial court with discretion to grant a severance ... when it believes the defendants or the Government may be prejudiced by a joinder." *Lane,* 438 U.S. at 449 n. 12, 106 S.Ct. at 732 n. 12. Moreover, although actual prejudice must be shown to overturn a conviction due to misjoinder under Rule 8, where actual prejudice cannot be shown, we will not automatically affirm a conviction being appealed under the prejudicial joinder guidelines of Rule 14. At first glance this may seem odd because the standard of review for Rule 14, reviewed for abuse of discretion, is lower than the standard of review for Rule 8. This appears all the more curious because Rule 14 provides relief from *prejudicial* joinder. Nevertheless, the inquiries are different.

Rule 14 provides the trial judge flexibility when it appears, before trial, that a joint trial or jointly tried offenses *may* pose a risk of prejudice to a party. *See Lane,* 438 U.S. at 449 n. 12, 106 S.Ct. at 732 n. 12. Although

we have held that the misjoinder under Rule 8(b) did not result in actual prejudice to Brown, we have not yet determined whether, prior to trial, the district judge abused his discretion by consolidating the trials and offenses. We will not collapse the risk of *potential* prejudice *pre-trial* inquiry of Rule 14 into the *post-trial* question of *actual* prejudice under Rule 8. Moreover, we will not collapse a matter of judicial discretion into a question of law.

Nonetheless, we hold that the district judge did not abuse his discretion in denying Brown's Rule 14 motion for severance of defendants. Further, the district judge did not abuse his discretion in denying Brown's Rule 14 motion for severance of counts because, as we have said, the evidence of firearms possession offenses was cross-admissible had Brown been tried alone on the drug-trafficking offenses. We take each issue in turn.

### 1. Rule 14 Relief from Prejudicial Joinder of Defendants

■ Rule 14 provides that "[i]f it appears that a defendant or the government is prejudiced by a joinder ... of defendants in an indictment or information or by such joinder for trial together, the court may ... grant a severance of defendants or provide whatever other relief justice requires." FED.R.CRIM.P. 14; see also *United States v. Washington,* 969 F.2d 1073, 1080 (D.C.Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1287, 122 L.Ed.2d 679 (1993). This court gives district courts great latitude to sever defendants under Rule 14. *See, e.g., id.; United States v. Harrison,* 931 F.2d 65, 67 (D.C.Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 408, 116 L.Ed.2d 356 (1991); *United States v. Ford,* 870 F.2d 729, 730 (D.C.Cir.1989).

Brown argues that the district judge abused his discretion because he and his codefendant were presenting antagonistic or mutually exclusive defenses. *See, e.g., Manner,* 887 F.2d at 326 ("[d]enial of a severance motion generally constitutes an abuse of discretion when the defendants present conflicting and irreconcilable defenses and there is a danger that the jury will unjustifiably infer that this conflict alone demonstrates that

both are guilty") (internal quotations and citations omitted).

To show abuse of discretion, however, the defendant must show more than " 'the presence of some hostility' " among co-defendants, *see id.* at 326 (quoting *United States v. Wright,* 783 F.2d 1091, 1094 (D.C.Cir.1986)), and "must show more than the fact that co-defendants whose strategies were generally antagonistic were tried together." *United States v. Robinson,* 432 F.2d at 1351 (citation omitted); *see also United States v. Bruner,* 657 F.2d 1278, 1291 (D.C.Cir.1981). In fact, as Justice O'Connor, writing for a unanimous Supreme Court, recently declared, "[m]utually antagonistic defenses are not prejudicial *per se.* Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro,* — U.S. at — —, 113 S.Ct. at 937–38 (citing *Lane,* 474 U.S. at 449 n. 12, 106 S.Ct. at 732 n. 12; *Opper,* 348 U.S. at 95, 75 S.Ct. at 165). Rather, the Court held that "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* — U.S. at —, 113 S.Ct. at 938. The *Zafiro* opinion lists examples of what might constitute a "serious risk": inadmissibility of evidence if tried separately, "markedly different degrees of culpability," if "essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Id.* Furthermore, "[w]hen the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but ... less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* (citing *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987)).

Brown did not demonstrate a high risk of prejudice. He argues that his and Williams' defenses demonstrate an " 'irreconcilable inconsistency,' " *Manner,* 887 F.2d at 326 (citation omitted), because "[t]he core of co-defendant Williams's defense was that the drugs and gun seized from her apartment belonged to Mr. Brown and that she merely permitted him to store them there. In contrast, Mr. Brown denied any involvement in the drug trafficking offenses that he claimed were committed by Williams's family. If the jury believed Williams's defense that Mr. Brown stored his guns and drugs in her apartment, it could not believe his defense that he was not involved in the drug trafficking that occurred there. On the other hand, if the jury believed his defense, then it could not find credible Williams's defense that the drugs and guns belonged to Mr. Brown." Reply Br. at 18. Brown neglects a third option, however, the one the jury obviously chose, that neither Brown's nor Williams' defense was completely accurate. Brown's real concern is that Williams' testimony was damaging to his defense. In the first place, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro,* — U.S. at —, 113 S.Ct. at 938 (citations omitted). Second, "[w]hile '[a]n important element of a fair trial is that a jury consider *only* relevant and competent evidence bearing on the issue of guilt or innocence,' ... a fair trial does not include the right to exclude relevant and competent evidence. A defendant normally would not be entitled to exclude the testimony of a former codefendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant." *Zafiro,* — U.S. at —, 113 S.Ct. at 938 (quoting *Bruton,* 391 U.S. at 131 n. 6, 88 S.Ct. at 1625 n. 6 and adding emphasis). Finally, although mutually antagonistic or irreconcilable defenses "may be so prejudicial in some circumstances as to mandate severance ... the courts have reversed relatively few convictions for failure to grant a severance on grounds of mutually antagonistic or irreconcilable defenses." *Zafiro,* — U.S. at —, 113 S.Ct. at 937 (citations omitted).

In short, we cannot say that the district judge abused his discretion in denying the motion to sever defendants.

### 2. Rule 14 Relief from Prejudicial Joinder of Counts

■ Rule 14 also provides that "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses ... in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, ... or provide whatever other relief justice requires." In reviewing the district court's denial of the Rule 14 motion to sever counts, we find no abuse of discretion in this case primarily for the reasons stated in Section IV.d.4. of this opinion, namely, that the evidence of firearms possession offenses was cross-admissible had Brown been tried alone on the drug-trafficking offenses. *See* FED. R.EVID. 403, 404(b).

## V.

### *Conclusion*

In conclusion, we hold that the Rule 8(b) misjoinder did not constitute plain error resulting in actual prejudice to Brown; and we affirm the order of the district court denying the motions to sever counts and defendants.

*Judgment affirmed.*

HARRY T. EDWARDS, Circuit Judge, dissenting:

I cannot join the majority opinion because, in my view, the District Court erred in denying appellant's pre-trial motion to sever counts under Rule 14 of the Federal Rules of Criminal Procedure. As this court long ago recognized, "the admissibility of the other crimes evidence in separate trials is a highly significant factor in determining whether joinder is prejudicial...." *Drew v. United States,* 331 F.2d 85, 90 n. 12 (1964) (citing cases). Under Rules 404(b) and 403 of the Federal Rules of Evidence, the evidence separately seized in November 1990 and in February 1991 would not have been cross-admissible had appellant been tried separately on the respective charges. This is so because the gun and the beeper that were seized during appellant's arrest in February 1991 bore no probative value whatsoever on the question whether appellant had intended to distribute drugs confiscated *three months*

*earlier.* The motion to sever should have been granted.

Appellant James Brown was tried on nine counts charged in a superseding indictment returned on April 9, 1991. Of those nine counts, seven were drug trafficking and related charges stemming from the November 20, 1990 search of an apartment belonging to appellant's co-defendant, Victoria Williams. That search revealed, *inter alia,* a locked safe containing crack cocaine, drug paraphernalia, two operable firearms, and ammunition. Appellant's fingerprints were found on the inside of the safe itself and on a digital scale discovered in the safe. The remaining two counts arose from appellant's arrest on February 21, 1991, at which time Brown, a convicted felon, was found to be carrying a semi-automatic pistol with a defaced serial number. A search incident to arrest further revealed that appellant carried a telephone beeper and a key bearing four numbers, three of which matched the serial number on the safe seized in November, the fourth number on the safe having been obliterated during its seizure.

I cannot agree with the majority's conclusion that the gun and the beeper recovered in February 1991 would have been admissible in a trial of the November drug trafficking charges. Under the Federal Rules of Evidence, the trial court must undertake a two-step inquiry to determine the admissibility of such extrinsic evidence. *United States v. Washington,* 969 F.2d 1073, 1080–81 (D.C.Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1287, 122 L.Ed.2d 679 (1993); *United States v. Miller,* 895 F.2d 1431, 1435 (D.C.Cir.), *cert. denied,* 498 U.S. 825, 111 S.Ct. 79, 112 L.Ed.2d 52 (1990). Rule 404(b), the first hurdle, requires that the evidence be admitted for a legitimate purpose, specifically, a purpose other than "to prove the character of a person in order to show action in conformity therewith." FED.R.EVID. 404(b); *Washington,* 969 F.2d at 1080. If a purpose other than propensity to commit crime can be shown, the trial judge still must determine whether the prejudicial impact of the evidence substantially outweighs its probative value. *See* FED.R.EVID. 403; *Washington,* 969 F.2d at 1081. In my view, the gun and

the beeper fail to overcome even the first hurdle.

Although Rule 404(b) does not automatically bar evidence of a bad act that occurred after the crime charged, we have recognized that "[t]he temporal (as well as the logical) relationship between a defendant's later act and his earlier state of mind attenuates the relevance of such proof." *United States v. Watson,* 894 F.2d 1345, 1349 (D.C.Cir.1990). As we have previously noted, later acts are most likely to show the accused's intent when "they are fairly recent and *in some significant way connected with prior material events." United States v. Childs,* 598 F.2d 169, 174 (D.C.Cir.1979) (emphasis added) (evidence that defendant subsequently returned to same location to sell other stolen items probative of defendant's criminal intent with respect to crime charged). Here, the gun and the beeper were discovered on appellant's person fully three months after the raid on Williams' apartment uncovered two firearms and evidence of drug dealing. In my view, this is not so tight a temporal nexus as to shed significant light on whether appellant, in November, intended to distribute drugs or possess guns. Indeed, the temporal sequence in this case cuts peculiarly against admissibility, since the Government is in effect asking us to believe that the February possession of a gun and beeper were probative of intent to possess and distribute drugs that had long since been confiscated in the raid on Williams' apartment. Unless the jury were to draw the additional, and impermissible, inference that appellant *again* was involved in drug dealing and therefore must have been so involved on a prior occasion, the gun and beeper simply are not probative at all.

Moreover, there are no circumstances in this case to suggest that the subsequent act "in some material way [was] connected with the prior event." *United States v. Gallo,* 543

F.2d 361, 365 (D.C.Cir.1976). At the time of his February arrest, appellant was not found to be carrying drugs nor were there any surrounding indicia of current drug involvement. This case therefore is easily distinguished from cases in which the "bad act" sought to be introduced consists of evidence of *actual prior drug dealing. See, e.g., Washington,* 969 F.2d at 1080–81; *United States v. Rogers,* 918 F.2d 207, 210 (D.C.Cir. 1990); *United States v. Anderson,* 881 F.2d 1128, 1142 (D.C.Cir.1989). In those cases, the similarity of the charged crime and the other acts evidence established a nexus that is wholly lacking here. In *Rogers,* for example, the defendant had been observed running with and tossing away a gym bag containing fifty-five grams of crack cocaine. In that case, we sanctioned the introduction of evidence of the defendant's prior crack distribution in order to rebut defendant's testimony that he had picked up someone else's bag by mistake. *See Rogers,* 918 F.2d at 210. We also approved the admission of evidence that Rogers had previously possessed a beeper in light of Rogers' testimony that the beeper found on his person at the time of arrest belonged to a friend.* *See id.* at 212–13. In this case, however, the only logical connection between the two sets of evidence is that the jury could conclude from the gun and beeper found in February that appellant fit the profile of a drug dealer (or indeed, simply that appellant was a "bad" person) and thus must surely have been guilty of possessing and intending to distribute the drugs found in Williams' apartment—precisely the inference against which Rule 404(b) is meant to guard.

---

* In *Rogers,* the defendant's attorney had waived his Rule 404(b) objection with respect to the beeper and our analysis proceeded under Rule 403. Therefore, we declined to address the questions whether Rule 404(b) applies only to "bad" or criminal acts and if so, whether possession of a beeper constitutes such an act. *See Rogers,* 918 F.2d at 212 n. 3. Similarly, I here express no

opinion on these questions, but note only that, even if Rule 404(b) does not apply, appellant's beeper still should not have been admitted in a trial of the November drug charges as it bore no probative value on the question whether appellant had intended to distribute drugs confiscated three months earlier.