UNITED STATES of America

v.

John Fitzgerald ROGERS, Appellant.

No. 90–3016.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 25, 1990.

Decided Nov. 9, 1990.

Daniel J. McGuan, Rockville, Md. (appointed by the court) for appellant.

Norman C. Bay, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Helen M. Bollwerk, and Merrick B. Garland, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge, and RUTH BADER GINSBURG and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge THOMAS.

CLARENCE THOMAS, Circuit Judge:

On July 14, 1989, police officers Tyrone McKelvy and Curt Sloan saw a group of men gathered near a wall behind 4226 Fourth Street, S.E., in Washington, D.C. John Fitzgerald Rogers sat on the wall with a gym bag beside him. Rogers and the others also saw the policemen. Someone said "get the bag"; Rogers grabbed it, ran towards the St. Thomas More School (about six hundred feet away, at number 4265), and threw the gym bag into a sewer. McKelvy and Sloan arrested Rogers near the school's entrance. When McKelvy searched Rogers, he found a telephone beeper. When McKelvy and Sloan recovered the gym bag, they found inside it a box of plastic sandwich bags and a brown paper bag, that in turn contained four plastic bags filled with a total of fifty-five grams of 82% pure cocaine base (crack), worth about $5500.

Rogers had been arrested on the same street twice before. On May 26, 1988, the police stopped a car on the 4200 block of Fourth Street, S.E., and found crack in it. When the police searched Rogers, who was riding in the car, they found a beeper and $662 in cash on him. On November 2, 1988, the police raided 4236 Fourth Street, S.E. Rogers, who was inside, ran to a window and threw nine bags of crack to the ground. As a result of this incident, the police arrested Rogers. He later pleaded guilty in juvenile court to distributing drugs.

On August 10, 1989, Rogers was indicted for the events of July 14, charged with one count of possessing more than fifty grams of crack with intent to distribute, see 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii), and one count of possessing crack with intent to distribute it within one thousand feet of a school, see id. § 845a(a). At trial, Officers McKelvy and Sloan described the events of July 14. Detective Johnny St. Valentine

Brown then testified as an expert witness on drugs. Brown explained that crack users usually buy the drug in small amounts (not $5500 dollars' worth), but that dealers typically buy crack in volume and use plastic sandwich bags to package their crack for retail distribution. Brown said that after repackaging, the crack found in the gym bag could have yielded about 275 individual portions. Brown also explained that drug retailers use telephone beepers to remain accessible to their wholesalers and customers. Finally, Brown testified that he had often seen people throw drugs away when the police were about to arrest them.

Rogers took the stand as well. He testified that he had once lived at 4244 Fourth Street, S.E., and that on July 14, 1989 he had gone to visit his girlfriend at number 4246, and later, to gamble at number 4242. Asked about the events surrounding his arrest that evening, Rogers admitted having thought that the gym bag contained something illegal, though not crack, and said that he had picked up the bag and run for fear that if he had stayed where he was, the police would have arrested him. Asked about the beeper, Rogers denied that it belonged to him, and claimed that he had been meaning to return it to the friend who had lent it to him. On cross-examination, Rogers said he agreed with the prosecutor's description of the 4200 block of Fourth Street as a "drug market." Rogers admitted over objection that he had once owned a beeper himself. He also admitted, again over objection, that he had once before distributed crack on the 4200 block of Fourth Street and that when he had seen the police, he had thrown the crack away. On redirect, Rogers said that he had pleaded guilty in juvenile court and had been committed to a group home. On November 17, 1989, the jury convicted Rogers on both counts of the indictment.

In his appeal, Rogers argues that the district court should have refused to allow the prosecutor to ask him about his prior ownership of a beeper and his prior distribution of crack, and should have granted his motions for a judgment of acquittal or a

new trial. We turn first to the court's decisions to let in evidence of Rogers's other acts.

Before trial, the government stated that it planned to introduce "Rule 404(b) evidence" (in its rebuttal case or on cross-examination) showing that Rogers had owned a beeper and had distributed crack before his arrest on July 14, 1989. Both items of evidence, the government maintained, would help demonstrate that Rogers had known that the gym bag contained crack and that he had not picked up someone else's bag by mistake. Rogers's lawyer objected. He argued that the government was impermissibly using both items of evidence to try to prove that Rogers had the character of a drug dealer and that he had behaved accordingly. *See* Fed.R.Evid. 404(b). He also insisted that the nature of the two acts, as well as Rogers's youth (seventeen at the time he committed them), would lead to prejudice far outweighing either item's value as proof. *See* Fed.R. Evid. 403. He objected to the evidence concerning the prior distribution of crack on the additional ground that the government was impermissibly trying to introduce proof of a juvenile adjudication. *See* Fed. R.Evid. 609(d). The district court decided to admit both items of evidence.

■ Rogers renews his objections on appeal. We first review the district court's decision to admit proof of Rogers's prior distribution of crack. We do so bearing in mind, as the Supreme Court has noted, that the Federal Rules of Evidence are creatures of statute, *see Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 163, 109 S.Ct. 439, 446, 102 L.Ed.2d 445 (1988) (unanimous in relevant part); Pub.L. No. 93–595, 88 Stat. 1926 (1975), and that we thus should construe them using " 'traditional tools,' " *Beech Aircraft*, 488 U.S. at 163, 109 S.Ct. at 446 (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987)). We begin, as we do with any statute, with the language of the rules themselves. *See id.; see also, e.g., Pennsylvania Dep't of Pub. Welfare v.*

*Davenport*, — U.S. ——, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990) (applying "fundamental canon that statutory interpretation begins with the language of the statute itself").[1]

As their language makes clear, rules 401, 402, and 403 set out the general principle that evidence should be admitted if relevant, but relevant evidence may be excluded if unfairly prejudicial. *See Huddleston v. United States*, 485 U.S. 681, 687, 108 S.Ct. 1496, 1500, 99 L.Ed.2d 771 (1988). Each of the three rules by its terms applies without limitation, to all evidence in all circumstances. Because "some situations recur with sufficient frequency," however, "[certain] patterns [are] susceptible of treatment by [other,] specific rules." Fed. R.Evid. 401 advisory committee's note. Rule 404 and the rules that follow in article IV thus "serve as illustrations of the application of [rules 401 and 402] as limited by the exclusionary principles of Rule 403." *Id.; see also Huddleston*, 485 U.S. at 687, 108 S.Ct. at 1500.

> Rule 404(b) provides:
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The first sentence of rule 404(b) prohibits the introduction of evidence of a defendant's crimes, wrongs, or acts only for one particular purpose. The second sentence of the rule offers some examples of permissible purposes for which that evidence might be relevant within the meaning of rule 401. Evidence that fits within rule 404(b)'s second sentence, however, and that is not barred under rule 404(b)'s first sentence, is not by virtue of those reasons automatically admissible: instead, "the determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and

---

1. *But cf.* Jonakait, *The Supreme Court, Plain Meaning, and the Changed Rules of Evidence*, 68 Tex.L.Rev. 745 (1990) (criticizing Court's approach).

other factors appropriate for making decisions under Rule 403." Fed.R.Evid. 404 advisory committee's note; *see, e.g., United States v. Manner,* 887 F.2d 317, 321 (D.C.Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990).[2]

Rogers first contends that the district judge should have refused under rule 404(b) to allow the government to ask him about his previous distribution of crack. We disagree. Rule 404(b) would have barred the government from trying to persuade the jury that because Rogers had distributed crack in November 1988, he had the character of a drug dealer, and that because he had the character of a drug dealer, he must have dealt drugs in July 1989. The government, however, introduced evidence concerning the defendant's prior arrest for distributing crack because, it argued, the evidence would show that Rogers had not merely picked up someone else's gym bag by mistake. The district court correctly held that the evidence was relevant, introduced as it was for three of the purposes that rule 404(b) endorses, and not for the purpose that the rule proscribes. The evidence indicated that Rogers was familiar with crack distribution near the St. Thomas More School and the government introduced the evidence to show knowledge, intent, and the absence of mistake. *See, e.g., United States v. Watson,* 894 F.2d 1345, 1348–49 (D.C.Cir.1990) (possession of cocaine subsequent to possession charged in indictment relevant to show defendant's knowledge of "cocaine distribution business"); *United States v. Molinares Charris,* 822 F.2d 1213, 1220 (1st Cir.1987) ("Evidence of [the defendants'] prior involvement in smuggling controlled substances, even though the involvement occurred several years earlier, tended to disprove their claim of 'mere presence,' and was, therefore, probative of their state of mind."), *cert. denied,* ——

U.S. ——, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989); *United States v. Moore,* 732 F.2d 983, 987–92 (D.C.Cir.1984) (prior pattern of drug dealing similar to crimes charged relevant to show intent and admitted over rule 404(b) challenge); *United States v. Harrison,* 679 F.2d 942, 948 (D.C.Cir.1982) (similar); *cf.* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[12], at 404–84 to 404–87 (1990) ("[E]vidence of another crime which tends to undermine [a] defendant's innocent explanation for his act will be admitted; 'the oftener a like act has been done, the less probable it is that it could have been done innocently.'" (quoting 2 J. Wigmore, *Evidence* § 312 (3d ed. 1940))).

■ Rogers also contends that the district court should have excluded the evidence under rule 609(d). Rule 609(d) provides that "[e]vidence of juvenile adjudications is generally not admissible under this rule," referring, that is, only to rule 609. Subsection (a) of rule 609, which subsection (d) qualifies, states the general conditions under which "[f]or the purpose of attacking the credibility of the witness," a party can introduce "evidence that the witness has been convicted of a crime." Rogers further argues that even if we conclude that rule 609(d) does not by its terms bar the evidence of the crack distribution, we should read the policies of rule 609(d) into the plain language of rule 404(b)—and hold that rule 404(b) stops a party from ever introducing evidence of acts that resulted in a juvenile adjudication, even if the party does not introduce the evidence to prove action in conformity with character. Otherwise, Rogers contends, we would be allowing the government to circumvent rule 609: "Not only does characterizing the 'acts' of a juvenile that resulted in a juvenile adjudication as probative of 404(b) exceptions nullify the prohibition against using juvenile adjudications to impeach the

**2.** *See generally* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[08], at 404–58 (1990) (citations and footnotes omitted):

Rule 404(b) is a specialized rule of relevancy. Accordingly, as with any determination pursuant to Rule 401, counsel must be prepared to 1) identify the consequential fact to which the proffered evidence of other crimes,

wrongs or acts is directed, 2) prove the other crimes, wrongs or acts, and 3) articulate precisely the evidential hypothesis by which the consequential fact may be inferred from the proffered evidence. Evidence which passes muster up to this point must, in addition, satisfy the balancing test imposed by Rule 403....

defendant—it does so with a vengeance." Brief for Appellant at 20.

Having examined the words of the rules, we hold that the district judge properly declined to exclude under rule 609(d)—or under a hybrid of rules 609(d) and 404(b)—the evidence of Rogers's prior distribution of crack. Rule 609(d) governs only the admissibility of evidence introduced for impeachment of a witness. Evidence not introduced to attack a witness's credibility falls outside the rule's scope. Here, the government questioned Rogers about the circumstances that surrounded his prior crack dealing in order to rebut his defenses of mistake and lack of intent and lack of knowledge. Neither rule 404(b) nor rule 609(d) required the evidence's exclusion. The language of the two rules is plain, *see, e.g., Huddleston*, 485 U.S. at 687, 108 S.Ct. at 1500, and we decline Rogers's invitation to conflate them. *See, e.g., United States v. Peterson*, 867 F.2d 1110, 1115 (8th Cir. 1989) (recognizing distinction between rules 404(b) and 609(d)).

Rogers argues further that the district court should have excluded under rule 403 the evidence of his prior crack distribution. Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Relevant evidence properly admitted over a rule 404(b) objection always poses the risk of unfair prejudice to some degree, for a jury considering the evidence might draw the inference from character barred under the rule's first sentence. At the same time, the evidence might also prejudice a defendant if the jury thinks his act particularly repugnant, for instance, or thinks the victims of the defendant's act deserving of sympathy. In either case, rule 403 protects defendants by requiring that a judge evaluate the risks of that unfair prejudice and balance them against the evidence's value as proof, taking into account, as the advisory committee commented, "the probable effectiveness or lack of effectiveness of a limiting instruction." Fed.R.Evid. 403 advisory committee's note. *See generally* E. Imwinkelried, *Uncharged Misconduct Evidence* §§ 8:23 to 8:28 (1990).

In this case, the district judge took into account the possibility of unfair prejudice—including any unfair prejudice that Rogers's youth might cause him—and decided that it did not outweigh the probative value of the testimony concerning Rogers's prior crack dealing. He also instructed the jury that it could only consider the evidence for limited purposes. In admitting the evidence over Rogers's 403 objection, the district judge did not abuse his discretion. *See Manner*, 887 F.2d at 322; *cf. Moore*, 732 F.2d at 989 ("The language of [rule 403] tilts, as do the rules as a whole, toward the admission of evidence in close cases.... [T]he balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged." (footnotes omitted)).

We turn now to the district court's decision to admit proof of Rogers's prior possession of a beeper. During the trial, after the government had rested, the prosecutor reaffirmed that he planned to ask Rogers about having once distributed crack and about having once possessed a beeper. Rogers's lawyer objected, but the district judge decided to admit the evidence. Later, after the defense had rested, the prosecutor proposed a limiting instruction concerning the prior distribution of crack. With respect to the beeper, however, the prosecutor said at the same bench conference:

> I also understand from the discussions with [Rogers's lawyer] that while he regards the November 1988 distribution as 404(b) evidence, he does not think anymore and I don't think anymore that the previous beeper from May is really under 404(b) at all. It's not a prior crime and the jury can consider it however it wants. I'm stating this for the both of us.

Rogers's lawyer did not disassociate himself from the prosecutor's representation.

A lawyer's objection to the district court's ruling on the admission of evidence can be appealed if it is made on time and on the record and the specific grounds for his objection are stated. *See* Fed.R.Evid. 103(a)(1). That rule is designed, as the

advisory committee explained, to call "the nature of the error ... to the attention of the judge, so as to alert him to the proper course of action and enable opposing counsel to take corrective proper measures." *Id.* advisory committee's note. When an objecting lawyer withdraws his objection after the judge rules, the judge has no reason to reconsider his ruling, and the other side's lawyer has no reason to propose an alternative course of action. If, therefore, a lawyer has acquiesced in a ruling he once claimed was erroneous, the lawyer must reassert his prior objection if he expects to preserve it for appeal. *See, e.g., Daskarolis v. Firestone Tire & Rubber Co.,* 651 F.2d 937, 938 (4th Cir.1981) ("Beyond presenting and arguing a point, an objecting party has a further duty to make clear, after the ruling, that he is still pressing it."); *Krause v. Chartier,* 406 F.2d 898, 901 (1st Cir.1968) ("[T]he plaintiff did not fulfill the duty that is upon the objecting party to make clear to the district court that he is pressing his point, and what point it is; ... the court was justified in believing plaintiff had accepted a ruling which the court had been prepared to consider further."), *cert. denied,* 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969). In this case, Rogers's lawyer failed to disagree when the prosecutor, purporting to speak for him, unequivocally stated that "the previous beeper from May is [not] really under 404(b) at all." Rogers's lawyer therefore waived his argument that the district court should have excluded the beeper evidence under the first sentence of rule 404(b).[3]

■ Rogers's lawyer did not, however, waive his objection to the evidence under rule 403. The government points out that Rogers's lawyer kept quiet when the prosecutor, speaking for both of them, said that "the jury can consider [the prior beeper evidence] however it wants." Asked at oral argument about the prosecutor's comment and his own silence, Rogers's lawyer explained that he had preferred not to focus the jury's attention on the beeper that Rogers had in his possession on July 14, and had therefore waived his right to a limiting instruction. That explanation makes sense. A lawyer can choose not to ask for a limiting instruction, and if he does choose not to ask for an instruction, he cannot appeal the district judge's failure to issue one. *See, e.g., Varhol v. National R.R. Passenger Corp.,* 909 F.2d 1557, 1567–68 (7th Cir.1990) (en banc) (per curiam); *see also United States v. Childs,* 598 F.2d 169, 176 (D.C.Cir.1979) ("It is well known that, even when a limiting instruction is likely to aid the accused's cause, astute defense counsel may prefer tactically to forego it in the interest of avoiding its inevitable focus of the jury's attention on unfavorable evidence."). In exercising that strategic prerogative, however, a lawyer does not thereby waive his objection to the admission of evidence in the first instance. What matters in this case, therefore, is what the prosecutor did *not* say, and what Rogers's lawyer thus did not agree to. The prosecutor here did not say that the beeper evidence no longer posed any rule 403 problems. Rogers's lawyer had previously objected to the evidence on rule 403 grounds. He did not demonstrate his assent to the district judge's decision to admit the evidence over his rule 403 objection, and he kept silent only in the face of the prosecutor's somewhat opaque reference to the role of the jury. He did not waive his rule 403 objection. We thus review the district court's ruling.

■ We have little trouble upholding it. As the government's expert testified at tri-

---

**3.** Because Rogers's lawyer waived his rule 404(b) argument, we need not enter the debate over whether a rule 404(b) "act" means any act, good, bad, or neither, or whether evidence of an act comes within rule 404(b) only if the act is similar in kind to a crime or a wrong. *Compare* E. Imwinkelried, *Uncharged Misconduct Evidence* § 2:16, at 44 (1990) ("Congress' use of all three terms manifests a legislative intent that Rule 404(b) apply to innocent acts as well.")

*with, e.g., United States v. Rawle,* 845 F.2d 1244, 1247 (4th Cir.1988) ("To fall within the scope of Rule 404(b), an act need not be criminal, so long as it tends to impugn a defendant's character."). Nor must we decide, assuming the latter conclusion (which we suppose follows from applying ejusdem generis), whether—and under what circumstances—possessing a beeper maligns the person who possesses one.

al, drug dealers use beepers. The district court properly gave that testimony substantial weight. *See, e.g., United States v. Hoyos,* 892 F.2d 1387, 1392 (9th Cir.1989) ("Narcotics dealers ... use beepers and public telephones in plying their illicit trade."), *cert. denied,* —— U.S. ——, 111 S.Ct. 80, 112 L.Ed.2d 52 (1990); *United States v. Rollins,* 862 F.2d 1282, 1286 n. 1 (7th Cir.1988) ("[D]rug traffickers tend to use telephone beepers as an effective means of communicati[on]."), *cert. denied,* —— U.S. ——, 109 S.Ct. 2084, 104 L.Ed.2d 648 (1989); *United States v. Zapata–Tamallo,* 833 F.2d 25, 28 (2d Cir.1987) (per curiam) (similar). The court also decided that the probative value of the testimony concerning the beeper outweighed the risk of unfair prejudice that the evidence might cause Rogers. In refusing to exclude the evidence under rule 403, the court did not abuse its discretion.

█ We turn finally to the district court's decision to deny Rogers's consolidated motions for a new trial or a judgment of acquittal on the second count of the indictment, which charged him with violating 21 U.S.C. § 845a(a). As the court noted in its opinion, a defendant "must overcome a strong presumption," in both motions, "in favor of upholding the jury verdict." *United States v. Rogers,* Crim. No. 89–0265–LFO, mem. op. at 1 (Jan. 22, 1990). In considering a motion for a judgment of acquittal, a district judge must appraise the record evidence "in the light most favorable to the prosecution" and determine "whether [it] could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318, 319, 99 S.Ct. 2781, 2788, 2789, 61 L.Ed.2d 560 (1979); *see United States v. Weisz,* 718 F.2d 413, 438 (D.C.Cir.1983) ("[A] judgment of acquittal is appropriate only when there is *no* evidence upon which a reasonable juror might fairly conclude guilt beyond a reasonable doubt."), *cert. denied,* 465 U.S. 1027, 104 S.Ct. 1285, 79 L.Ed.2d 688 (1984). We do the same on appeal. *See Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978); *Weisz,* 718 F.2d at 437. In considering a motion for a new trial, a district judge weighs the evidence and evaluates the witnesses' credibility and decides whether " 'a serious miscarriage of justice may have occurred.' " *Tibbs v. Florida,* 457 U.S. 31, 38 n. 11, 102 S.Ct. 2211, 2216 n. 11, 72 L.Ed.2d 652 (1982) (quoting *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir.1980)); *see United States v. Ashworth,* 836 F.2d 260, 266 (6th Cir.1988) (court should grant motion for new trial on grounds that verdict is against weight of evidence " 'only in the extraordinary circumstances where the evidence preponderates heavily against the verdict' " (citation omitted)); *cf.* Fed.R.Crim.P. 33 ("The court ... may grant a new trial to [a] defendant if required in the interest of justice."). We review the district court's decision for abuse of discretion. *See Ashworth,* 836 F.2d at 266; *United States v. Logan,* 861 F.2d 859, 863 (5th Cir.1988).

Section 845a(a) provides:

Any person who violates section 841(a)(1) ... by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a ... school ..., is ... punishable ... by a term of imprisonment, or fine, or both up to twice that authorized by section 841(b)....

In its charge to the jury, the court told it that "[t]he government is not required to prove that the defendant actually knew that he was within a thousand feet of a school when he committed the crime. The government must only prove that the defendant was in fact within 1,000 feet of the school when he committed the offense." After retiring for deliberations, the jury asked whether "a guilty verdict required the defendant to be viewed as merely being in possession within a thousand feet of a school even if it were his intent to distribute at a distance of more than a thousand feet?" Over the government's objection, the court instructed the jury that the defendant "has to have the intent to distribute within a thousand feet of a school ..., and if he is found near a school with the intent to distribute drugs some other place, that is not a violation of the statute." Rogers maintains that the court instructed the

jury correctly but that the government did not introduce enough evidence to support a verdict of guilty. The government argues that the court's latter instruction misstated the law, and it offers a different interpretation of the statute. In the government's view, a jury can convict under section 845a(a) if it finds that the defendant possessed drugs inside the thousand-foot zone and intended to distribute them—anywhere.

We need not decide here which interpretation of section 845a(a) is correct.[4] Ample, and convincing, evidence supported the jury's verdict under the reading of the statute more favorable to Rogers. The St. Thomas More School stands on a block that resembles an open-air drug bazaar. On July 14 Rogers was sitting on that block, approximately six hundred feet away from the school, next to a gym bag containing fifty-five grams of crack divided into four portions and plastic bags for further repackaging. Rogers had distributed crack on the same block before. He had been carrying a beeper on July 14, and he had been arrested on that block with a beeper before. The district court wrote that "the jury could have concluded that the repackaging and distribution of the drugs were intended to take place [where Rogers possessed the crack] or, alternatively, that [Rogers] intended to transfer the whole bag of drugs to another individual at this location." *Rogers*, Crim. No. 89–0265–LFO, mem. op. at 4. We agree. The district court correctly denied the motions for a judgment of acquittal or a new trial.

For the foregoing reasons, the defendant's conviction is

*Affirmed.*

---

4. We do note, though, that three district judges in another circuit have rejected the interpretation that the government advances here, holding that section 845a(a) requires at least that a defendant intend to distribute drugs at a place that in fact lies within a thousand feet of a school. *See United States v. Coates*, 739 F.Supp. 146 (S.D.N.Y.1990) (dismissing indictment when defendants arrested with drugs on board train under Pennsylvania Station in New York, which is itself underneath a vocational school, but no proof of intent to distribute in Penn Station); *United States v. Roberts*, 735 F.Supp. 537 (S.D.N.Y.1990) (similar); *United States v. Liranzo*, 729 F.Supp. 1012 (S.D.N.Y.1990) (possession in Port Authority bus terminal in New York; proof of intent to distribute in Reading).