930 P.2d 468

**STATE of Arizona, Appellee,**

v.

**Alfonso E. TOVAR, Appellant.**

No. 1 CA–CR 95–0527.

Court of Appeals of Arizona,
Division 1, Department B.

June 18, 1996.

Review Denied Jan. 14, 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, J. Randall Jue, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for Appellant.

OPINION

EHRLICH, Judge.

Alfonso E. Tovar ("defendant") appeals his conviction for aggravated assault and the sentence imposed. For the reasons which follow, we affirm.

*FACTS* [1] *AND PROCEDURAL HISTORY*

On November 15, 1993, L.P.,[2] the victim, was walking south toward home along 75th Avenue in Phoenix. At some point, he saw the defendant and another individual, C.A., driving northbound in the defendant's car. Another car, with two more acquaintances of the defendant, followed. A .25 caliber handgun, which C.A. brought with him when the defendant picked him up earlier that day, was on the front seat between the defendant and C.A.

L.P. and the defendant had known each other for several years and did not get along. Ostensible affiliations with rival gangs had led to fights in the past and, on this occasion, led the defendant to confront L.P. about threats that the gang to which L.P. allegedly belonged wanted to kill him.

The defendant stopped his car in the road across from L.P. and asked, "What's up, [L.P.]?" According to L.P., the defendant also displayed the handgun. The defendant then said, "I heard that Mark wants to get me." After another exchange of words, during which L.P. and one of the occupants of the trailing car glared at each other, the defendant sped forward, made a U-turn and came back toward L.P. As the car was driven slowly past L.P., the defendant fired two or three shots out of the passenger-side window and then sped away. According to the defendant, who testified at trial, he shot at L.P. because he believed that L.P. was reaching for a gun. L.P. turned away from the gun fire and fell to the ground. Although able to get home, once there, L.P. discovered that he had been shot in his right shoulder near his neck. L.P. called his mother at work; she then called the police.

The defendant was arrested and, after his transfer to the adult division of superior court, indicted on one count of aggravated assault with a handgun, a class 3 felony. The jury returned a verdict of guilty and the defendant was sentenced to a mitigated six-year prison term. He was given 145 days of

pre-sentence incarceration credit and ordered to pay $100 in restitution and various assessments and fees. This timely appeal followed.

## DISCUSSION

The defendant alleges two errors for consideration:

1. Whether the trial court erred in allowing the state to impeach the defendant with a prior, specific instance of conduct involving a handgun; and

2. Whether the trial court erred by communicating with the jury without notifying the parties.

### A. Prior Conduct

■ During cross-examination of the defendant by the prosecutor, the following exchange took place:

Q. Do you have a handgun?

A. No, I don't.

Q. Do you carry a handgun?

A. No, I don't.

Q. Have you ever carried one in the past?

A. No, I haven't.

Q. Have you ever carried or used a handgun in your entire life?

A. Yes, I have.

Q. When was that?

A. When my dad would take me like to Shooter's World or somewhere.

Q. And you have never carried a handgun at any other time?

A. Not in my adult life, no.

[PROSECUTOR]: Your Honor, can I have a bench conference?

Q. Not in your adult life?

A. No.

Q. Would what [sic] would that be since you turned 18?

A. Yes.

Q. Before you were 18?

THE COURT: Is that a yes?

---

1. The facts are viewed in the light most favorable to sustaining the verdict, resolving all reasonable inferences against the defendant. *E.g., State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613

(1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

2. Initials are used to ensure privacy.

A. Yes.

Q. Before you were 18, did you carry a handgun?

A. No, I didn't carry one.

Q. Did you ever use a handgun?

A. No.

Q. You never have in your entire life?

A. Just like I said, when I would go with my dad.

[PROSECUTOR]: Your Honor, may we approach?

The prosecutor then asked the trial court to permit her to impeach the defendant with a 1992 juvenile adjudication involving the use of a handgun; the defendant had admitted to robbing a convenience store at gun point. Over the defendant's objection, the court permitted the impeachment but limited the state to only asking whether the defendant had been adjudicated for "an offense" involving a handgun. The impeaching question was then asked and the defendant responded affirmatively.[3]

The defendant claims that he is entitled to a new trial because the impeachment was improper under Arizona Rule of Evidence ("Rule") 608(b). We disagree. While the prosecutor's questioning regarding handgun use or possession prior to the aggravated-assault incident was irrelevant, the fact remains that the questions were asked without objection and the false answer was given by the defendant. It is the defendant, albeit as a result of this improper but unobjected-to questioning, who "opened the door" to his impeachment by failing to object to improper questioning. The prosecutor's sanitized inquiry as to the defendant's prior adjudication was not an attempt to impeach his general character for "truthfulness or untruthfulness," but rather a permissible means of demonstrating that the defendant had lied to the jury about his previous use of a handgun. *See United States v. Beverly,* 5 F.3d 633, 639–40 (2nd Cir.1993) (defendant who testified on cross-examination that he never possessed a gun in Albany, had no familiarity with guns other than from incomplete security-guard training, and was not in Albany on particular dates "opened the door" to impeachment with prior conduct involving guns and presence in Albany). That the defendant's prior crime of armed robbery is not the type of crime that is "probative of truthfulness or untruthfulness" under Rule 608(b) does not alter the analysis. "Once a defendant has put certain activity in issue by … denying wrongdoing, the government is entitled to rebut by showing that the defendant has lied." *Id.* at 639.[4]

 The dissent discusses whether the impeachment of the defendant with his prior juvenile adjudication violated Rule 609(d). Inasmuch as the defendant was aware that the prior adjudication occurred when he was a juvenile and defense counsel generally objected to its admission at the bench conference, there was every opportunity for the defendant to have made a Rule 609(d) argument. He chose instead to attack the impeachment on Rule 608(b) grounds. Having done so, any argument based on Rule 609(d) has been waived. *State v. McCall,* 139 Ariz. 147, 163–64, 677 P.2d 920, 936–37 (1983).[5]

---

3. The transcript of the bench conference contains defense counsel's claim that he was not aware of the prior juvenile adjudication. However, upon questioning by the trial court and the prosecutor, counsel acknowledged having represented the defendant at the transfer hearing where the prior was a part of the record.

4. After the impeaching statement was made, the defendant sought and was granted the opportunity to "explain" the contradiction. He claimed that his initial negative response was a result of his intoxication at the time of the robbery and the fact that he did not learn that he had used a handgun until he was before the juvenile court.

5. While the defendant does make mention of Rule 609 in his opening brief, it is only in the following context: He argues at the outset that "[t]his topic is addressed by Rule 608(b)," which discourse proceeds at an appropriate length, before he says, in the last sentence of his argument, that "without complying with *any* of the requirements of Rule 609," the trial court erred. (Emphasis original.) This sole mention of Rule 609 appears to be erroneous; it clearly does not qualify as an argument. *See* Ariz.R.Crim.P. 31.13(c)(1)(iv) ("appellant's brief shall include: … [a] concise argument containing the contentions of the party, the reasons therefor, and necessary supporting citations"). This resolution is buttressed by the fact that fundamental-error review is no longer required, *see, e.g., State v. Smith,* 184 Ariz. 456, 459–60, 910 P.2d 1, 4–5 (1996), and, thus, there is less reason to independently conduct a Rule 609(d) analysis for the

### B. Trial Court's Communication with the Jury

■ The jury was instructed and sent to begin its deliberations during the afternoon of May 17, 1995. Sometime between 4:00 p.m. and 5:30 p.m., the transcript indicates that the trial judge entered the jury room and engaged in the following dialogue:

THE COURT: The record will show the presence of the jury. Counsel's presence is waived.

Due to the late hour and because of bus schedules and so forth, I am inclined to excuse you unless you are very close to a verdict. I don't want to influence you in any way at all, but if that's the case, that you need more time, you can come back tomorrow morning about 9:00 so to finish deliberations.

Or it could be earlier if you wanted.

A JUROR: Is it because anybody in here takes a bus?

THE COURT: Pardon?

A JUROR: Is it because someone in here takes a bus?

THE COURT: Well, that's part of it, and the other concern is when it's late, they want to try to get the building emptied out.

THE COURT: Security is shut done [sic] about.

THE JUDICIAL ASSISTANT: 5:00.

THE COURT: The other problem is we are concerned about security in the area after 6:00, but it's light out so that's not a major concern.

A JUROR: I have a really hard time missing another day of work.

A JUROR: We don't really know how close we are. Maybe we should take a vote.

THE COURT: Well, I don't want to force you into anything. We have one juror— your name was again?

VENIREMAN STAHL: Kim Stahl. I just—I mean being a teacher, you know I have been out all week.

THE COURT: I understand. I don't want to put any undue pressure on you. We all have to make sacrifices. Well, if you want to talk about it and let us know.

A JUROR: Do you want to just give us a few minutes?

THE COURT: Really, you have got to take as much time as you need, but that's up to you folks.

A JUROR: What do you think about taking a vote?

A JUROR: Let's do that and see where we are at. Does anybody object so we can see where we are?

THE COURT: All right. We will let you do that, then.

■ In Arizona, "error occurs in a criminal case when a trial judge communicates with jurors after they have retired to deliberate unless the defendant and counsel have been notified and been given an opportunity to be present." *State v. Sammons*, 156 Ariz. 51, 57, 749 P.2d 1372, 1378 (1988). The defendant claims that, despite the court's indication that the presence of counsel was waived, he was not given notice of the court's intent to communicate with the jurors. In response, the state merely reiterates the court's statement that the presence of counsel was waived; it provides no evidence to indicate that counsel was, in fact, notified. Thus, on this record, error occurred.

■ That error occurred does not, however, mean that a reversal is required. When ex parte communications between the trial court and the jury center on "extraneous matters," as opposed to substantive issues, the defendant must show that he suffered actual prejudice from the communication. *See, e.g., State v. Burnetts*, 80 Ariz. 208, 212, 295 P.2d 377, 379 (1956). "Where it can be said, beyond a reasonable doubt, that there was no prejudice to the

---

defendant. To hold otherwise is to suggest that this court review evidentiary rulings on grounds never presented to the trial court. The case of *Retzke v. Larson*, 166 Ariz. 446, 449, 803 P.2d 439, 442 (App.1990), authored and cited by the dissent, is not to the contrary, standing as it does

only for the proposition that the "rule against advancing new theories or issues on appeal is not intended to preclude the presentation and analysis" of new cases for theories advocated in the trial court.

defendant, a communication between judge and jury outside the presence of defendant and counsel is harmless error." *Sammons*, 156 Ariz. at 57, 749 P.2d at 1378. The ex parte communication in this case was harmless; the judge was simply inquiring as to when the jury might like to end its deliberations for the day due to reasons of security and court administration. He repeatedly told the jurors that he was not putting any pressure on them and that the decision to stay and deliberate or to break for the evening was up to them. The jurors' decision to take a preliminary vote was not something that the judge suggested or encouraged. There was nothing prejudicial in the exchange between the judge and the jury.

## CONCLUSION

We affirm the defendant's conviction and the sentence imposed.

GRANT, P.J., concurs.

GERBER, Judge, concurring in part and dissenting in part.

Although I agree with the majority regarding the trial judge's communication with the jury, I respectfully dissent from its analysis of Tovar's impeachment via his juvenile adjudication. The majority bases its reasoning on Arizona Rule of Evidence 608(b) apparently because Tovar argues that rule in his brief. However, we do not limit our consideration of a properly-raised issue merely because of counsel's inapplicable citations. To get the right result we need the right rule, which here is 609(d). "Conviction of crime as a technique of impeachment is treated in more detail in Rule 609. . . ." Jack B. Weinstein and Margaret A. Berger, 3 *Weinstein's Evidence: Commentary on Rules of Evidence for the United States Courts and State Courts* § 608–6 (1988).

Counsel's ignoring Rule 609(d) does not waive the impeachment issue. In *McCall*, 139 Ariz. at 163–64, 677 P.2d at 936–37, our Supreme Court merely held that failure to raise and argue a "claim" on appeal constitutes its abandonment. However, once the impeachment issue is raised, as it is here, our obligation is to decide it under the correct rule even if a party cites an inapplicable or peripheral rule, as often is the case on appeal. To do so, we may address dispositive rules such as 609(d) not cited to the trial court or relied on by the parties. *See Retzke v. Larson*, 166 Ariz. 446, 449, 803 P.2d 439, 442 (App.1990).

Under Rule 609(d), juvenile adjudications are inadmissible to impeach a defendant-witness. Morris K. Udall et al., 1 *Arizona Practice: Law of Evidence* § 47, at 92 (3d ed. 1991); Kenneth S. Broun et al., 1 *McCormick on Evidence*, at 147 n. 27 (John W. Strong ed., 4th ed. 1992). That rule allows impeachment via juvenile adjudication only of a witness "other than the accused." The court has no discretion to permit such impeachment against a juvenile defendant who testifies in his own behalf.[6] Weinstein & Berger, *supra*, at § 609–21. A.R.S. section 8–207 repeats this stricture by stating that "[t]he disposition of a child in the juvenile court may not be used against the child in any case or proceeding in any court . . ., whether before or after reaching majority."

Use of juvenile adjudications to impeach defendant-witnesses undermines the historic public policy behind Rule 609(d). Because juvenile proceedings once lacked the procedural safeguards of adult trials, they lacked the probative force of adult convictions. *Id.* at 609–20. Though *In Re Gault*, 387 U.S. 1, 25, 87 S.Ct. 1428, 1442, 18 L.Ed.2d 527 (1967), tightened juvenile procedural safeguards it nonetheless held that states could still retain the confidentiality of juvenile proceedings to protect the juvenile's status and record. Section 8–207 and Rule 609(d) im-

---

**6.** Some courts and commentators argue that Rule 609 vests discretion in trial judges to admit prior *adult* convictions to impeach a defendant if the court determines that the probative value of the conviction outweighs its prejudicial effect. *See, e.g., United States v. Rogers*, 918 F.2d 207, 211 (D.C.Cir.1990). *See generally,* Allen G. Minker, *Admissibility of Prior Convictions: Arizona's New Law on Impeachment,* 16 Ariz.B.J. 31 (Aug. 1980). Assuming the need for a balancing test for admission of *adult* convictions implies *a fortiori* a more stringent balancing test regarding admission of juvenile adjudications. No such test was done here.

plement these two aims by removing discretion from trial courts regarding impeachment by juvenile adjudications.

The facts here resemble *United States v. Harvey,* 588 F.2d 1201, 1202 (8th Cir.1978), where the trial court permitted the prosecutor to cross-examine Harvey regarding his juvenile adjudications. The Eighth Circuit Court of Appeals held that this impeachment violated Rule 609(d) and reversed Harvey's conviction for this reason. *Id.* 588 F.2d at 1204. *See also United States v. Pretlow,* 770 F.Supp. 239, 243 (D.N.J.1991) (defendant's juvenile adjudications inadmissible as impeachment). State courts have reached similar results. *People v. Kerns,* 229 Ill.App.3d 938, 172 Ill.Dec. 144, 146, 595 N.E.2d 207, 209 (1992), held that impeachment via juvenile adjudications had a "prejudicial effect" and reversed Kerns' conviction for this reason.

The three non-reversed cases discussing this issue are readily distinguishable. *United States v. Rogers,* 918 F.2d 207, 211 (D.C.Cir.1990), suggests that the trial court has discretion to admit evidence of a juvenile adjudication if the court determines that the probative effect of the conviction outweighs its prejudicial effect and the conviction refutes a specific defense. The trial court there admitted evidence of Rogers' prior juvenile cocaine convictions to refute his defense of mistake, not for impeachment, the former purpose falling "outside the rule's scope." *Id. See also State v. Rodriguez,* 126 Ariz. 28, 30–31, 612 P.2d 484, 486–87 (1980) (juvenile adjudication not admissible for impeachment but admissible to rebut possible insanity defense). *United States v. Canniff,* 521 F.2d 565, 568 (2d Cir.1975), acknowledged that evidence regarding juvenile adjudications is generally improper but that no real prejudice occurred because the jury never learned of the juvenile adjudication. *Id.* However, here, unlike *Canniff,* evidence of Tovar's juvenile adjudications did reach the jury.

For these reasons, I would apply Rule 609(d) as the dispositive rule and would fol-low the authority cited above, which requires reversing Tovar's conviction.