NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

WILLIAM CODY SCHLICHER, *Appellant.*

No. 1 CA-CR 25-0085

FILED 02-11-2026

Appeal from the Superior Court in Maricopa County
No. CR2022-002622-001
The Honorable Monica Edelstein, Judge

**AFFIRMED**

COUNSEL

Apfel Law Group, Phoenix
By Seth Apfel
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Joseph A. Newburg, II
*Counsel for Appellee*

—————————————————

## MEMORANDUM DECISION

Presiding Judge D. Steven Williams delivered the Court's decision, in which Judge Andrew M. Jacobs and Judge Michael S. Catlett joined.

—————————————————

**W I L L I A M S**, Judge:

**¶1**   Defendant William Cody Schlicher appeals his convictions and sentences for one count each of child sex trafficking and aggravated luring of a minor for sexual exploitation. For the following reasons, we affirm.

## FACTUAL AND PROCEDRUAL HISTORY

**¶2**   In February 2021, an undercover detective posted a personal ad online titled "Daddy/daughter fun time–69" under the pseudonym "Dave Parks." Schlicher responded to the ad and began a text conversation with Parks. Schlicher asked for a photo of the "daughter" referenced in the ad and Parks responded that he did not "like her pictures out there since she[']s a little on the younger side." Schlicher soon stopped responding to Parks.

**¶3**   Four months later, however, Schlicher reached back out to Parks asking if Parks was still interested. Schlicher asked Parks whether the daughter in the ad was a stepdaughter and again asked for a photo. Parks replied that she was, that her name was "Emma," and that he didn't "like sharing her photo online due to her [age]." When Schlicher asked for a picture of her breasts, Parks replied, "At 13 they are pretty small." Parks asked Schlicher whether he had "previous experience with [a] similar age," to which Schlicher replied, "I'm cool with it." Schlicher asked Parks whether he was affiliated with law enforcement, which Parks denied.

**¶4**   Schlicher and Parks texted back and forth on and off for the next two months. In early August, Schlicher texted Parks asking whether Emma was "available to pound." Parks and Schlicher discussed scheduling options for Schlicher and Emma to meet up. As part of those discussions, Parks texted that Emma "is going into 8th grade." The following day, Parks texted Schlicher that to be with Emma would cost him "100 for first hour and 50 each additional. She prefers amazons/apple gift cards so [she] can get some stuff for the new school year[.]" Schlicher replied, "Oh didn't

know I was paying." Parks said, "Not so much as paying as contributing to her education fund." Parks replied, "Ok."

¶5        Schlicher then asked Parks again for a photo, and Parks sent a photo of a clothed adult female detective from the neck down. Schlicher asked if he could talk to Emma and Parks replied that he would give her Schlicher's number. Parks then began texting Schlicher from a different phone number posing as Emma. In that conversation, Schlicher made various sexually explicit comments to Emma and discussed wanting to get together with her. Emma asked Schlicher what he looked like and Schlicher sent her a photo of an erect male penis. Schlicher texted Parks asking for a phone call with Emma. Schlicher called Parks, who put a female detective on the phone posing as Emma. In the phone call, Schlicher coordinated with Parks to tentatively meet up with him and Emma the following week and made sexually suggestive comments to Emma.

¶6        Parks sent several texts from both him and Emma to Schlicher in the following days, but Schlicher never responded and did not reach out to Parks or Emma again. Police arrested Schlicher in late August. The State charged Schlicher with one count of aggravated luring of a minor for sexual exploitation and one count of child sex trafficking.

¶7        At trial, the State called as witnesses the two undercover detectives who had posed as Parks and Emma. At the close of the State's case-in-chief, Schlicher moved for a verdict of acquittal on the child sex trafficking charge under Arizona Rule of Criminal Procedure 20, which the court denied.

¶8        Schlicher took the stand in his defense and admitted the phone used to text Parks and Emma belonged to him and that he sent the text messages. He testified he thought Parks was "maybe . . . older" and "had like a stepdaughter that was . . . a little younger than him" and that he and Emma were role-playing. But, he continued, he did not think that Emma was a minor. He also testified he did not intend to communicate his willingness to pay for sex by responding "ok" after Parks mentioned payment.

¶9        The jury convicted Schlicher as charged including, finding as an aggravator, that the child-sex-trafficking count was a dangerous crime against a child ("DCAC") under A.R.S. § 13-705. The superior court sentenced Schlicher to consecutive terms of imprisonment: three years for aggravated luring of a minor for sexual exploitation, and thirteen years for child-sex-trafficking.

¶10        Schlicher timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.        The Superior Court Did Not Abuse its Discretion in Admitting Schlicher's Prior Convictions into Evidence.

¶11        Before trial, the State moved the superior court to allow it to impeach Schlicher at trial (if he chose to testify) with his two prior felony convictions. On the third day of trial, anticipating Schlicher would testify, the court allowed the State to impeach him with the prior convictions but ordered them sanitized. During Schlicher's direct examination, the following exchange occurred between him and his attorney:

> DEFENSE COUNSEL: Do you have any felony convictions?
>
> SCHLICHER: Yes, I do.
>
> DEFENSE COUNSEL: Was that up in Yavapai [County]?
>
> SCHLICHER: Yes, sir.
>
> DEFENSE COUNSEL: What year was that conviction?
>
> SCHLICHER: That was 2008, I believe. It was 2008, 2009 area. Yep.
>
> DEFENSE COUNSEL: And that wasn't for a sex case; right?
>
> SCHLICHER: No, sir.
>
> DEFENSE COUNSEL: Nothing like this?
>
> SCHLICHER: No.

¶12        Outside of the jury's presence, the superior court raised a concern to the parties about the question, "Nothing like this?" and Schlicher's answer, "No." The State then argued that through this testimony, Schlicher opened the door to the nature of his prior felony

4

convictions, which should now be explained to the jury. The court agreed, finding that "the door ha[d] been opened such that prohibiting the State from inquiring about the . . . crime of conviction is misleading." The court ruled, over Schlicher's objection, that the State could inquire into the nature of Schlicher's prior convictions. Then on redirect, the following exchange occurred between Schlicher and his attorney:

> DEFENSE COUNSEL: Now, . . . [you] do acknowledge that you have a felony conviction, the date of conviction is June 29th, 2009 --
>
> SCHLICHER: Yes.
>
> DEFENSE COUNSEL: -- right? And you agree that there's two counts. They're both for the same thing --
>
> SCHLICHER: Yes.
>
> DEFENSE COUNSEL: -- and they both are Child Abuse (Reckless). You agree with that?
>
> SCHLICHER: Yes. Reckless.
>
> DEFENSE COUNSEL: So that's what your convictions are for?
>
> SCHLICHER: Yes.
>
> DEFENSE COUNSEL: And it had nothing to do with sex and child or --
>
> SCHLICHER: No.
>
> DEFENSE COUNSEL: So child because it's child abuse, but not child because it has nothing to do with sex; right?
>
> SCHLICHER: No. It had nothing to do with sex.

¶13 Schlicher contends the superior court abused its discretion by allowing the jury to hear evidence of the nature of Schlicher's prior felony convictions. We review the admission of prior convictions under Arizona Rule of Evidence 609 for abuse of discretion. *State v. Beasley*, 205 Ariz. 334, 338, ¶ 19 (App. 2003).

5

¶14            When a defendant testifies at trial, the State may attack the defendant's character for truthfulness by introducing evidence of the defendant's prior felony convictions if "the probative value of the [prior-conviction] evidence outweighs its prejudicial effect to th[e] defendant." Ariz. R. Evid. 609(a)(1)(B). "[A] trial court should sparingly admit evidence of prior convictions when the prior convictions are similar to the charged offense; or in appropriate cases, the trial court may reduce the risk of prejudice by admitting the fact of a prior conviction without disclosing the nature of the crime." *State v. Bolton*, 182 Ariz. 290, 303 (1995). "[I]n deciding whether to reveal the *nature* of the defendant's offenses to the jury, the court must balance the probative value of the conviction as to the defendant's credibility against the very real possibility that the jury may misuse this information to the defendant's prejudice." *Beasley*, 205 Ariz. at 338, ¶ 19.

¶15            Here, the superior court found it would be misleading to the jury to exclude the nature of Schlicher's prior felony convictions after he answered affirmatively that the convictions were "nothing like" this case since both cases involved minor victims. Schlicher argues "there was nothing misleading" about his responses because his prior convictions did not involve "anything sexually related" or "any attempt to engage in any sexual behavior involving a minor." Although Schlicher testified that his prior convictions were "nothing like" this case, there is a common element to each crime—each case involved crimes against minors. The court acted within its discretion to conclude Schlicher's testimony risked misleading the jury.

¶16            The superior court relied on *State v. Tovar*, 187 Ariz. 391 (App. 1996), as a basis for its decision. In *Tovar*, the defendant testified on cross examination he had never used a handgun. 187 Ariz. at 392–93. The prosecutor asked the court to permit her to impeach the defendant with a prior juvenile conviction involving the use of a handgun, and the court permitted the impeachment. *Id.* at 393. On appeal, this court affirmed the superior court's ruling, reasoning the defendant "opened the door" and that the prosecutor's inquiry into the conviction was "a permissible means of demonstrating that the defendant had lied to the jury about his previous use of a handgun." *Id.*

¶17            Schlicher argues *Tovar* is inapposite because, unlike the defendant in that case, Schlicher did not outright lie to the jury. But again, Schlicher testified that his prior convictions were "nothing like" this case even though both cases involved crimes against children. We do not suggest that Schlicher necessarily intended to mislead the jury, but the fact remains that, contrary to Schlicher's testimony, his prior convictions were

not "nothing like" this case. On this record, Schlicher has shown no error in the superior court's reading of *Tovar*.

¶18        Schlicher also argues the superior court abused its discretion because it failed to conduct the "balancing inquiry to determine whether introduction of the nature of Schlicher's prior conviction[s] would be prejudicial in comparison to its probative value." When determining whether to allow evidence of a prior conviction, "[t]he trial judge should . . . make a finding on the record that the probative value of the evidence substantially outweighs the danger of unfair prejudice." *State v. Sullivan*, 130 Ariz. 213, 217 (1981).

¶19        Though Schlicher contends otherwise, the superior court fulfilled its obligation here. When announcing it would allow the jury to hear the nature of Schlicher's prior convictions, the court explained it had initially sanitized the convictions "because the prior conviction[s were] with respect to a child" and the court deemed that "in and of itself unduly prejudicial after following the [Rule] 403 balancing test." But following Schlicher's testimony, the court found "the door ha[d] been opened such that prohibiting the State from inquiring about . . . the crime of conviction is misleading."

¶20        "Explicit findings" balancing the probative value of allowing in to evidence the nature of a prior conviction against the prejudicial effect "are preferable but not necessary when the basis for the trial court's ruling appears in the record." *Beasley*, 205 Ariz. at 339–40, ¶ 25. Schlicher is correct that the superior court did not explicitly find the probative value of the nature of his prior convictions to outweigh its prejudicial effect after Schlicher gave misleading testimony. But such a finding may readily be inferred from the court's colloquy.

¶21        We also note the jury received a limiting instruction that it could not use Schlicher's prior convictions as evidence of guilt. And Schlicher references this court's warning in *Beasley* that "the available research indicates juries have great difficulty in following limiting instructions about the use of prior convictions of defendants charged with crimes similar to the prior convictions." 205 Ariz. at 339, ¶ 24. But *Beasley* involved a superior court's unexplained wrongful admission of prior-conviction evidence that we determined could not be saved by a jury instruction. It did not involve the defendant "opening the door" to the nature of his prior convictions as Schlicher did here. *Id.* at 339–40, ¶¶ 24–25. Once Schlicher "opened the door" to the nature of his prior convictions, the court was within its discretion to conclude that the probative value of the

evidence outweighed its prejudicial effect—which prejudicial effect was further reduced by the limiting instruction.

**¶22**     On this record, the superior court did not abuse its discretion in allowing the jury to hear the nature of Schlicher's prior convictions.

## II.     Sufficient Evidence Exists to Support the Jury's Conviction of Schlicher for Child Sex Trafficking.

**¶23**     Schlicher next challenges the sufficiency of the evidence supporting his conviction for child sex trafficking. Schlicher concedes the evidence is sufficient to support his conviction for aggravated luring.

**¶24**     We review a claim of insufficient evidence de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Sufficient evidence may be direct or circumstantial and "is such proof that reasonable persons could accept as adequate" to "support a conclusion of [a] defendant's guilt beyond a reasonable doubt." *State v. Borquez*, 232 Ariz. 484, 487, ¶¶ 9, 11 (App. 2013) (quotation omitted). In reviewing sufficiency of the evidence, we test the evidence "against the statutorily required elements of the offense." *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005). We view the evidence in the light most favorable to upholding the jury's verdict and do not reweigh evidence or assess credibility of witnesses. *State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 38 (App. 2013).

**¶25**     Schlicher was convicted of child sex trafficking under A.R.S. § 13-3212(B)(1), which provides that "[a] person who is at least eighteen years of age commits child sex trafficking by knowingly . . . [e]ngaging in prostitution with a minor who is under fifteen years of age or engaging in prostitution with a person for the purpose of facilitating the prostitution of a minor under fifteen years of age." "Prostitution" is defined as "engaging in or agreeing or offering to engage in sexual conduct under a fee arrangement with any person for money or any other valuable consideration." A.R.S. § 13-3211(5). "It is not a defense" to prosecution of the crime of which Schlicher was convicted "that the other person is a peace officer posing as a minor . . . or a peace officer posing as a person facilitating the prostitution of a minor." A.R.S. § 13-3212(C).

**¶26**     Schlicher's conviction stemmed from the State's indictment that he demonstrated "agreement to pay $100 for the first hour and $50 for every other hour to engage in sexual conduct with . . . 'Emma.'" The alleged agreement arose out of the following text exchange:

SCHLICHER: What area are you

PARKS: North phx? You? 100 for first hour and 50 each additional. She prefers amazons/apple gift cards so [she] can get some stuff for the new school year

SCHLICHER: Oh didn't know I was paying

PARKS: Not so much as paying as contributing to her education fund

SCHLICHER: Ok

SCHLICHER: Can I see a pic of her butt or something

¶27        Schlicher does not challenge the sufficiency of the evidence that he knew or should have known Emma was under fifteen or that he intended sexual conduct. He only challenges "whether there was sufficient evidence that Schlicher actually agreed to furnish valuable consideration, an element of the [child sex trafficking] offense." He contends that his "ok" following Parks' mention of payment is insufficient to show agreement beyond a reasonable doubt without violating the First Amendment because its meaning is ambiguous.[1]

¶28        Schlicher's "ok" was not merely an isolated statement that, on its own, could be interpreted as assent. It was also followed by a request for more photos of Emma, a phone conversation between Schlicher, Parks, and Emma in which Schlicher discussed meeting with Emma, and a text exchange between Schlicher and Emma in which Schlicher made various sexually explicit comments and discussed meeting with Emma. Schlicher pursued a sexual meeting with Emma after Parks told him the encounter would be for a price. In this context, Schlicher's "ok" was sufficient for the jury to find that it was assent to payment.

---

[1]        Schlicher is not challenging the constitutionality of the child sex trafficking statute on its face or as applied to him. Instead, he argues that "First Amendment concerns here function as cautionary guidance such that they are grafted into the Child Sex Trafficking statute's interpretation" and "as applied to the facts of this case, the State is overreaching by applying the statute."

**¶29**         As for Schlicher's First Amendment argument, the State correctly points out that "words spoken with the intent to bring about the commission of an act of prostitution are not protected speech." *State v. Crisp*, 175 Ariz. 281, 283 (App. 1993). The jury's verdict implies that Schlicher's "ok" was spoken with the intent to bring about an act of prostitution. Schlicher's First Amendment argument therefore fails.

**¶30**         The record evidence is adequate to support the jury's conclusion that Schlicher agreed to Parks' fee arrangement in return for meeting up with Emma, and thereby engaged in child sex trafficking.

### III.     The Superior Court Correctly Imposed the DCAC Sentencing Enhancement to Schlicher's Sentence for Child Sex Trafficking.

**¶31**         Finally, Schlicher challenges his sentence for child sex trafficking. Schlicher argues the sentence for his child sex trafficking conviction cannot be enhanced as a DCAC under A.R.S. § 13-705(E) because the victim was not actually a minor.

**¶32**         We stayed this appeal pending the supreme court's review of *State v. Marner*, 258 Ariz. 512 (App. 2024) (*Marner I*). The supreme court has since vacated *Marner I*, holding that "neither § 13-3554 nor § 13-705 require an actual minor victim for the deployment of DCAC sentencing enhancement." *State v. Marner*, CR-24-0300-PR, 2026 WL 249230, at *1, ¶ 1, *9, ¶ 47 (Ariz. Jan. 30, 2026). The superior court, therefore, correctly imposed the DCAC sentencing enhancement.

### CONCLUSION

**¶33**         For the foregoing reasons, we affirm Schlicher's convictions and sentences.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR

10